1829.

In the Matter of Tracy.

---

## IN THE MATTER OF TRACY, AN HABITUAL DRUNKARD.

It is the privilege of a party against whom a commission of lunacy is issued, to be present at, and to have notice of its execution.[1]

If peculiar circumstances render it improper or unsafe to give such notice, they should be stated in the petition to the court, so that a special provision may be inserted in the commission dispensing with notice to the party.

In this state it is not a matter of course to allow an inquisition to be traversed, but the same rests in the sound discretion of the court.

The practice here is to award a feigned issue in all cases where a traverse would be proper, instead of allowing a formal traverse.

---

[1] *In the Matter of Pettit,* 2 Paige, 174.

An issue should be directed upon the application of the party in all cases of doubt, especially under the act respecting habitual drunkards.

Whether any, and what allowance will be made to a party out of this estate in the hands of a committee, depends upon the circumstances of each particular case.

*Where a person for any considerable part of his time is intoxicated to such a degree as to deprive him of his ordinary reasoning faculties, it is *prima facie* evidence that he is incapable of managing his affairs.

1829.

In the Matter of Tracy.

[*581]

SOME time during the last winter a commission in the nature of a writ *de lunatico inquirendo* was issued, upon which Anson Tracy was found to be incapable of conducting his affairs in consequence of habitual drunkenness.

August 24th.

*A. L. Jordan* now presented a petition in behalf of Tracy, in which it was stated that he was not incapable of conducting his own affairs; that he had no notice of the taking of the inquisition against him; that his property had been taken out of his hands and placed under the control of a committee : and praying that the proceedings might be set aside, and his property restored to him; or that he might be permitted to traverse the inquisition, and that a reasonable allowance for the expenses of the traverse might be paid out of his estate.

*A. P. Holdridge*, contra, produced numerous affidavits, among which were those of Tracy's father, and father in law, of his brother and his two daughters, of his brother in law and his family physician, showing that his property would be unsafe in his hands.

The CHANCELLOR said it was the privilege of a party against whom a commission of lunacy is issued to have notice, and to be present at its execution. That if there were any peculiar circumstances in the case which rendered it improper or unsafe to give notice to the party, as in some cases of furious madness, the facts should be stated in the application to the court, so that a provision might be inserted in the commission dispensing with the necessity of

1829.

In the Matter of Tracy.

notice. That as the proceedings were irregular in this respect, Tracy must have an opportunity to be heard and to produce his witnesses before the jury. But as it appeared from the affidavits on the other side that it would be unsafe to discharge the committee, the present proceedings must stand until further orders. A new commission must issue, and due notice of the time and place of executing the same must be given to Tracy.

[*582]

*Tracy's counsel then waived the want of notice, but insisted on his right to traverse the inquisition, and that a suitable allowance for the expense of the proceeding should be paid out of his estate by the committee.

THE CHANCELLOR:—By the 6th section of the statute 2 & 3 Edward 6th, chapter 8, (5 Statutes at Large, 301,) it is declared and provided that if any person shall be untruly found a lunatic or idiot, the person grieved thereby may have his or her traverse to the inquisition and proceed to trial therein, and have the like remedy and advantage as upon other cases of traverse upon untrue inquisitions or offices found; any law, usage or custom to the contrary notwithstanding. Under this statute, in England, a traverse of the inquisition is considered a matter of right, and the court has no discretion on the subject, except so far as to ascertain that the party in whose name the application is made wishes to traverse. (*Ex parte Ferne*, 5 Ves. 450, 883; *Ex parte Sherwood*, 19 Ves. 280.) But that statute has never been re-enacted here. In this state the care and custody of the estates of lunatics, idiots, and habitual drunkards is confided to this court, without any restriction or limitation.[1] The manner in which that control is to be exercised must therefore depend upon the sound discretion

[1] This power is now vested in "Supreme Court" which is substituted for "Chancellor" and "Court of Chancery" pursuant to ch. 280 of 1847; and in certain cases in the "County Court" which was substituted for "Court of Common Pleas" pursuant to chap. 30 of the Code of Procedure, sub. 8. See 2 R. S. (4th ed.) 237, secs. 1, 2, 3.

of the Chancellor. He may direct an issue to inform his conscience, whenever he deems it necessary, as in other cases. The practice here has been to award an issue, in all cases where a jury trial was proper, instead of permitting a formal traverse. (*Wendell's case*, 1 John. Ch. R. 600; *Folger's case*, 4 John. Ch. R. 169.) It is certainly proper in cases of doubt to permit a party to have a trial by jury before he is deprived of his property or his liberty, either by his misfortune or his fault. I should think it a discreet exercise of the power of the court to direct an issue in all cases of doubt, especially under the act relating to habitual drunkards. But a very erroneous impression appears to have gone abroad on this subject. It is supposed by many that the prosecutor in such cases is bound to prove affirmatively that an habitual drunkard is incapable of managing his affairs. On the contrary, the fact that a person is *for any considerable part of his time intoxicated to such a degree as to deprive him of his ordinary reasoning faculties, is *prima facie* evidence, at least, that he is incapacitated to have the control and management of his property.

Whether an allowance should be made to the party out of the estate to pay the expenses of a traverse is a different question from the one whether he shall be permitted to subject the prosecutor to the expense of a trial. In *Sherwood* v. *Sanderson*, (19 Ves. 290,) Lord Eldon allowed the costs of a traverse, but desired it to be distinctly understood that he did not consider the granting of costs a matter of course. In *Folger's case*, before cited, Chancellor Kent charged the whole costs of an unsuccessful traverse upon a third party, at whose instance the issue was awarded. And in M'Lean's case, (6 John. Ch. R. 440,) although he permitted an issue to try the question of sanity, he refused to charge the expense thereof upon the estate of the lunatic. In every case of this kind the court must exercise a sound discretion, regulated by the particular circumstances, so that while the party proceeded against is not deprived of the means of protecting his legal rights, the property, which

[*583]

1829.

Bruyn
v.
Receiver of
the Middle
Dist, Bank.

is necessary for the support of himself and his family, shall not be unnecessarily wasted in useless litigation, ...

In this case, although from the affidavits before me I can have but little doubt as to the result, yet as the property is large, and the party has not had an opportunity to be heard on the taking of the inquisition, I shall grant an issue, and direct the committee to pay to the counsel of Tracy twenty-five dollars out of his estate to defray the necessary expenses on his part.