## SUPREME COURT.

### IN THE MATTER OF HUGH PAYN AN ALLEGED LUNATIC.

The Court have no jurisdiction to appoint a committee of a lunatic or order a sale of his property, upon petition of his friends and relatives, before a commission of lunacy has been issued and returned.

*Washington Special Term, September,* 1852. This was an application *ex parte* on the part of Samuel Lewis and Martha, his wife, residents of Mechanicsville, Saratoga county, for the appointment of a guardian or special committee of Hugh Payn, on the ground that he is a person of unsound mind, and incapable of managing his affairs. The petition sets forth that the said Hugh Payn is aged 48 years, and has been from his infancy, from impaired body and unsound mind, wholly incapable of providing for himself, or conducting or managing his property, which consists only of the third part of a farm situate in Fort Miller, in the county of Washington, of the value of $600, and which at an annual rent produces only $40 per annum, a sum entirely inadequate to his support. The petition prays, that some suitable person may be appointed committee for the said Hugh, who shall be empowered to sell his property and invest the proceeds for his benefit—that the interest and so much of the principal as may be necessary, may be from time to time applied to his support—and proposes the petitioner, Samuel Lewis, who is the brother-in-law of the said Hugh, and who consents thereto, as the guardian. The petition is accompanied by no affidavits.

W. HAY, *for Petitioner.*

C. L. ALLEN, Justice.—The whole question presented by this petition is, whether the court has jurisdiction to order the sale of land of an alleged lunatic, without a preliminary inquisition as to his lunacy, and on the petition alone of his immediate relatives and friends.

In the Matter of Hugh Payn, an alleged lunatic.

I have carefully examined all the leading cases on this subject, both in the English courts and our own, and I cannot find a single instance in which an order of the kind prayed for has ever been granted.

By the old common law there was a writ termed " *de idiota inquirendo,*" to inquire whether a man be an idiot or not, which was to be tried by a jury of twelve men, and if they found him an idiot or lunatic, the profit of his land, and the custody of his person, was granted by the king to some subject who had interest enough to obtain them, (1 *Harr.* 491.) This was thought oppressive, and it very seldom happened that a jury found a man an idiot, *a nativitate,* but only *non compos mentis,* from some particular time. The method in England of proving a person *non compos mentis,* was very similar to that of proving him an idiot. The Lord Chancellor, to whom the custody of idiots and lunatics was entrusted, upon petition or information, granted a commission in the nature of the writ *de idiota inquirendo,* to enquire into the party's state of mind, and if he was found *non compos,* the care of his person and estate was usually committed to some friend, who was then called his committee. This petition was accompanied by affidavits setting forth the state and condition of the alleged lunatic—and some few instances of his declarations and actions; and the commission was usually granted, and the practice under it pretty much the same as has been uniformly adopted in this State ; and see *Shelford on Lunacy,* 15 ; 1 *Collins on Lunatics,* 86.

By our statute (2 *R. S.* 237, 4 *ed.*, 52,) § 1, it is declared that the Supreme Court shall have the care and custody of all idiots, lunatics, persons of unsound mind, and persons who shall be incapable of conducting their own affairs in consequence of habitual drunkenness, and of their real and personal estates, so that the same shall not be wasted or destroyed, and shall provide for their safe keeping and maintenance, and for the maintenance of their families and the education of their children, out of their personal estates, and the rents and profits of their real estates respectively.

Sections 2, 3, and 4, provide for proceedings in case of the application of the overseers of the poor of any city or town, for the exercise of the powers and jurisdiction of the court in cases of habitual drunkards, in which a commission to enquire into the fact of such alleged habitual drunkenness is specially directed.

Section 12, declares that whenever the personal estate of any idiot, lunatic, or other person specified in the act, shall not be sufficient to pay his debts that the *committee* shall apply to the court by which they were appointed, by petition, for leave to mortgage, lease, or sell so much of his real estate as shall be sufficient to pay his debts; and a reference shall be had to a referee or to the clerk to enquire into and report upon the matters therein contained, and to hear all parties concerned.

Section 17, makes a like provision, by petition and for a reference, where the personal property and rents and profits of the real estate shall be insufficient for the maintenance of the lunatic or his family.

These provisions, though somewhat enlarged, are similar to those contained in the acts of 1801, *Laws of* 1813, and 2 *R. S.* 52, § 1.

Under these statutes it has been the uniform practice of the Court of Chancery in this State, so long as it existed, to require the proceedings to be commenced by a petition for the writ *de lunatico inquirendo*, and that petition has always been required to be accompanied by affidavits setting forth the unsound state of mind of the party, and stating such instances of conduct or language as plainly indicated it.

In England as well as in this country, the courts have been rather scrupulous about granting *even a commission*, without strong preliminary proof, amounting at least to a probable case of insanity. In 1 *Malloy* 219, the Lord Chancellor remarked, "*that the mere issuing of a commission* might produce consequences highly detrimental, and it was not to issue without great circumspection;" and in *ex parte* Tomlinson, (1 *Ves. and Beames*,) the Lord Chancellor said, "the true point to consider on such an application is, whether it is for the benefit of the lunatic or his property that a commission should issue," and

In the matter of Hugh Payn, an alleged lunatic.

Mr. Shelford, (*p.* 82,) remarks that where the lunacy is not apparent, the affidavits of two physicians will be required— swearing to their opinion of the lunacy, and their reasons, for that opinion before even granting a commission. This has been usually required by our own courts as part of the moving papers, and has been, I believe, uniformly adopted.

There appears to be no cause, therefore, for the appointment of a committee, but to proceed in the usual way, of obtaining an inquisition, upon the return of which a committee may be appointed—and that committee may in due time apply for leave to sell the real estate of the lunatic. The sections of the statute above referred to clearly contemplate, indeed, they require, the appointment of a committee by the court in the usual way, before any petition can be entertained for the sale of the real estate.

The cases referred to by the counsel for the petitioners, only go to confirm the views already taken. In the matter of Barker, (2 *John. Ch.* 232,) Chancellor KENT entertained a motion for a *commission* in a case where a person from old age, sickness, or other cause, had become weak and incapacitated in mind, so as to be unable to manage his own affairs. He concluded he was rather extending the jurisdiction of the court to even order a commission in that case; but he does not intimate that the court could entertain a motion for the appointment of a committee, without a commission, and before the return of an inquisition finding Barker to be of *unsound mind and mentally incapable of managing his own affairs.* In the matter of Perkins, (2 *John. Ch.* 124,) the same learned jurist decided that where the person had been found a lunatic, by inquisition, in Massachusetts, and the petitioner duly appointed his committee, it was not sufficient to authorize a sale of the lunatic's estate for his maintenance, but a new commission must be awarded in this State, and a new inquisition found and returned, and a new committee appointed, before a sale of the real estate here could be authorized. This doctrine was sanctioned in the matter of Petit, (2 *Paige,* 174.)

In Smith-agt. Carll, (5 *John. Ch. R.* 118,) the same Chancellor remarked, that the court had a discretion to try all questions

of fact without the intervention of a jury—and that it is not bound to send a matter of fact to the jury, if it can decide for itself to its own satisfaction, upon the evidence; the aid of a jury being merely to inform the conscience of the court. He denied the motion for a rehearing in that case on the point of insanity, declaring that the testimony was entirely satisfactory to him on that point—that it must be recollected that a *commission* of lunacy had previously issued in that case, and that Hatwell, who had made the purchase which was declared void, had been found a lunatic, and that evidence had also been produced on the hearing, going to establish that fact.

Without a further review of the cases it will be found in all of them, that a commission has been uniformly issued, and an inquisition returned, before the appointment of a committee. Matter of Morgan, (7 *Paige*, 236,) and cases hereafter cited.

Indeed a committee has not always been appointed on the return of an inquisition. Leave has been sometimes given to the lunatic to traverse the inquisition, and it has sometimes been set aside by a personal inspection and examination of the lunatic by the court. (In the matter of Wendell, 1 *John. Ch. R.* 600; matter of Tracy, 1 *Paige*, 580; matter of Christie, 5 *Paige*, 242; matter of Morgan, 7 *Paige*, 231.)

In England, under the statutes of 2 and 3, Edward, the traverse is a matter of right. Here no statute has been enacted, but the court in their discretion, have often awarded a feigned issue to inform their conscience, when they have not been fully satisfied on the return of the inquisition. (See cases above cited.)

Again, when a commission is issued, the commissioners are directed in the order to give notice of the time and place of executing the commission to the supposed lunatic. He has a right to be present at the execution of it, and introduce witnesses on his own behalf. (2 *Ves.* 405;) matter of Gray, (1 *Paige*, 582;) matter of Petit, (2 *Paige*, 174;) and other cases.

I cannot perceive that the court have any jurisdiction under the statute, to appoint a committee of a lunatic or order a sale of his real estate, before a commission has been issued and

In the matter of Hugh Payn, an alleged lunatic.

returned with the proper inquisition, and a committee duly appointed. The court must be *satisfied* in the usual way, and after a jury has passed upon the question, and the supposed lunatic has had an opportunity of being heard, that he is of unsound mind before they have the power to act.

It would be dangerous in the extreme to permit or sanction a proceeding by which a man's person and property might be put at hazard on the sole representations of interested relatives, who feel disposed to swear to his insanity. No man would be safe under such a state of things. The greatest abuses might, and no doubt would be practiced. The courts as well as the statutes have thus far well guarded against the dangers of such a practice, and if they had the power or jurisdiction, (which I think they have not,) they would be careful of its exercise, and would be slow to deviate from a course which has received the sanction of ages.

The motion must be denied. I might perhaps have granted a commission if it had been prayed for, and the petition had been accompanied by the usual affidavits, but the present papers are defective, even for that purpose.