SOUTHERN TIER MASONIC RELIEF ASS'N v. LAUDENBACH et al.

(*Supreme Court, Special Term, Monroe County.*   February, 1889.)

1. INSANITY—INQUISITION—JURISDICTION OF COUNTY COURT.
    It appeared from a petition filed for the appointment of a commission *de lunatico inquirendo* that a resident of the county had left his family, home, and property, and while insane had left the state, and had remained away until the petition was filed, some five months later, and that his whereabouts was unknown.   The inquisition found him to have been a lunatic at the time of his departure and for 40 days previously, and that he did not enjoy lucid intervals.   Code Proc. N. Y. § 30, gives the county court jurisdiction of the custody of a lunatic residing in the county. *Held,* that as jurisdiction of the case in question depended upon the continuance of the alleged lunatic's residence in the county, and it appeared that the court was called on by the allegations of the petition to determine that fact, jurisdiction existed, and the inquisition was valid.

2. SAME—NOTICE TO LUNATIC.
    Under Code Civil Proc. N. Y. § 2325, which provides that notice of the filing of a petition *de lunatico* shall be served on the husband or wife or the relatives of the alleged lunatic unless for good reason appearing in the petition, and that where notice is required it may be given in such manner as the court deems proper, the inquisition is valid without notice to the alleged lunatic, though he did not appear in the proceedings.

3. SAME—EVIDENCE.
    Though the inquisition is conclusive evidence in an action involving the capacity of the alleged lunatic to make dispositions of property, on the question of his sanity at the time it was taken, it may be shown that since that time his sanity has been restored; and while ordinarily the effect of the inquisition may be avoided upon such restoration, by proceedings in the same court on motion to discharge the committee, if no committee has ever qualified or acted, the restoration may be shown in such an action by the introduction of testimony.

4. SAME.
    Since Laws 1874, c. 446, tit. 2, § 2, expressly provide that the sole question to be determined upon a commission of lunacy is as to the alleged lunatic's mental capacity at the time of the inquisition, the finding is no evidence of his insanity at the time of his departure from the state, several months before.

5. MUTUAL BENEFIT INSURANCE—CHANGE OF BENEFICIARY.
    A by-law of a mutual benefit insurance society, providing that the beneficiary named in a certificate of membership shall only be changed upon the return of the original certificate, is intended only for the convenience of the society, and may be waived by it.

6. SAME.
    The original beneficiary is entitled to repayment, out of the fund realized on the certificate at the death of the insured, of assessments paid by her in ignorance of the fact that a new beneficiary had been designated.

Bernhard Laudenbach, on the 28th day of November, 1874, became a member of the Southern Tier Masonic Relief Association, and received a certificate thereof, by which his wife was entitled to receive $2,000 at his death.   The by-laws of the corporation then provided that no change should be made in the beneficiary of the certificate unless the certificate was itself returned, with a request for such change duly acknowledged.   In 1878 the by-laws were so amended that when for any cause such certificate could not be returned the board of directors might permit the change without the return.   October 15,

1875, Laudenbach requested that the certificate should be so changed that Ignatz Thalheimer, to whom he was indebted, should receive $1,000 of the fund, it being intended to secure him his debt, but the certificate was not delivered up. A new certificate was issued April 7, 1884, by which it was provided that Henrietta Laudenbach, the wife of the insured, and the said Thalheimer, were to share the amount paid upon the certificate equally. Mrs. Laudenbach had no notice of the new designation, and paid the assessments for some time afterwards. Laudenbach had resided in the city of Rochester, in Monroe county, with his family, for nine years, when on the 27th day of December, 1875, he secretly left home, and went to Chicago, and never returned, his whereabouts being unknown to his wife. In April, 1876, she filed a petition in the county court of Monroe county, alleging that he was, and had been for some time, insane; and that she did not know where he was, but that he had property in said county. She prayed for the appointment of a commission *de lunatico inquirendo*, to determine his mental condition. The commissioners were appointed, and it was directed that the inquisition be taken without notice to the alleged lunatic. The inquisition found him to have been insane on the 27th day of December, 1875, and for 40 days previously, and that he had no lucid intervals. The court confirmed the inquisition, and appointed a committee of Laudenbach's person and estate, but the committee never qualified or acted. After Laudenbach left New York he went to Chicago, where he resided until 1884, being apparently of sound mind during all the time. In 1884 he became an inmate of the Sir Moses Montefiore Kesher Home for Aged and Infirm Israelites, an incorporated institution at Cleveland, Ohio, and on the 6th day of October of that year he made a new designation for the payment of the insurance money, whereupon the certificate of April, 1884, was delivered up, and a few days later a new certificate was issued, payable to Thalheimer, and the charitable institution last mentioned, in equal parts. Laudenbach died in 1887, and the fund due on his insurance was claimed by all the parties; Mrs. Laudenbach claiming the whole of it, and Thalheimer and the Kesher Home claiming half each. Thereupon the said relief association, being in doubt as to the proper person to whom payment should be made, brought this action of interpleader against all of the claimants. Code Civil Proc. N. Y. § 2325, provides that notice of the filing of a petition for a commission *de lunatico* shall be given to the husband or wife, or if none, to the other relatives of the alleged lunatic, unless for good cause appearing in the petition. When notice is required, it may be given in such manner as the court may deem proper.

*H. H. Rockwell*, for plaintiff. *E. W. Stebbins*, for Mrs. Laudenbach. *R. E. White*, for Mr. Thalheimer. *Perkins & Hays*, for the Sir Moses Montefiore Kesher Home for Aged and Infirm Israelites.

RUMSEY, J. It seems to be settled law that Mrs. Laudenbach had no vested interest in the certificate issued by the plaintiff to her husband in 1874, but he was at liberty to change the beneficiary at his pleasure. *Sabin* v. *Grand Lodge*, 6 N. Y. St. Rep. 151, BRADLEY, J It is objected that the constitution or by-laws of the plaintiff required that the certificate should be returned with the new designation, and that a new certificate shall be issued with a new designation indorsed on it. This was certainly a provision of the by-laws at the time the designation to Thalheimer was first made. But this requirement of the return of the old certificate was only for the convenience of the society, which could waive it at its pleasure, and which alone could insist on it. For that reason the first designation to Thalheimer is valid, if Laudenbach was in such mental condition at its execution that he could make it. Even if the return of the old certificate was until 1878 a condition precedent to the power of the plaintiff to accept a new beneficiary, it ceased to be so at that time, and the new certificate, issued upon the application of Laudenbach

in October, 1884, operated to change the direction of the fund if the appointer had at that time the mental capacity to make the new appointment. It is therefore apparent that the controversy turns upon the mental condition of Laudenbach, and very largely, of course, upon the effect to be given to the inquisition *de lunatico* found in April, 1876.

Several objections are made to the validity of this commission, none of which are in my judgment well founded. The first objection is that at the time of the inquisition Bernhard Laudenbach was a resident of the state of Illinois, and had ceased to be a resident of New York. The question of jurisdiction in these cases is to be decided upon the facts which appear to the court to which the application is made at the time of making it. If the facts then made to appear are such as to call upon the court to determine whether they establish the existence of the jurisdictional facts, the jurisdiction exists. *Miller* v. *Brinkerhoff*, 4 Denio, 119; *Skinnion* v. *Kelley*, 18 N. Y. 355. The county court, before which this proceeding was had, at that time had jurisdiction of the custody of a lunatic residing within the county. Code Proc. § 30. It appeared to that court that Laudenbach had been for nine years a resident of Rochester; that he had personal property there; and that his family still were there. It also appeared that in December, 1875, while he was insane from drink he left his home, and his whereabouts was unknown. Upon those facts the legal conclusion necessarily must have been that he had not ceased to be a resident of Monroe county. A man does not lose his residence in one place until he abandons it with the intention not to return, but to acquire a residence in another place. *De Meli* v. *De Meli*, 5 Civil Proc. R. 306. Nothing of that sort appeared to the county court. Usually a sane man takes his family with him, and the fact that while insane or drunk he has abandoned them does not raise even a presumption that he means to change his home and domicile. Indeed, upon the facts as they appear here, there is a serious question of fact whether in April, 1876, Laudenbach had finally decided to become a resident of Chicago. But it is sufficient to say that there was not before the county court any evidence whatever that he had ceased to be a resident of that county.

The next objection is that there was no notice to Laudenbach of the execution of the commission. Whether or not notice shall be required in proceedings *in rem* depends upon the statute. No question of constitutional power is involved. The fifth amendment to the constitution of the United States has nothing to do with it. That amendment restricts the power of the general government, but has no effect upon the states. *Jackson* v. *Wood*, 2 Cow. 818, note *b; Livingston* v. *Mayor, etc.*, 8 Wend. 85. There was no statutory provisions regulating proceedings *de lunatico* until 1874, and these provisions have been substantially incorporated into the Code of Civil Procedure. Before that, while it was usual to give the alleged lunatic notice of the execution of the commission, it was for the court to say whether notice should be dispensed with. *Re Tracy*, 1 Paige, 580. That is the rule now by statute. Code Civil Proc. § 2325. Before the Code, as now, giving of notice was discretionary and neglect to give it is simple irregularity, which does not avoid the proceedings. *Re Demelt*, 27 Hun, 480; *Re Rogers*, 9 Abb. N. C. 141; *Re Tracy*, 1 Paige, 580. In the case last cited, the chancellor, although he directed a new commission to issue and notice of its execution to be given to the lunatic, yet directed the proceedings taken under the former commission, by which a committee had been appointed and the property of the lunatic taken, to stand. This, of course, could not have been done if the proceedings had been utterly void. The inquisition is therefore of some weight, without regard to the fact of notice.

So far as Mr. Thalheimer is concerned, I do not think it is evidence of the condition of its subject in December, 1875, which was several months before it was taken. The law of 1874, c. 446, tit. 2, § 2, in force when this inquisi-

tion was taken, provided that the trial must be confined to the question whether the supposed lunatic was incompetent at the time it was taken. Before that statute, it had been usual to direct a finding as to the time during which the unsoundness had continued, and as to that time the inquisition was presumptive evidence of lunacy, irrespective of the question of notice. *Banker* v. *Banker*, 63 N. Y. 409. The statute has changed that rule. The jury could not, after its passage, return an inquisition retrospective in its effect. *Re Demelt*, 27 Hun, 480; *Dominick* v. *Dominick*, 10 N. Y. St. Rep. 32. So far as this finding was beyond the power of the jury, it was of no force as evidence. Eliminating from the case against Thalheimer the presumption of the inquisition, there is little left to warrant a finding that Laudenbach was insane. He was drunk a good deal, and it seems that, for some purpose, he was playing a part at his home; but when abroad his acquaintances did not see any change in him, and he did business as usual. Upon the whole evidence, I think he was not insane when he made the assignment to Thalheimer.

I would feel no difficulty whatever with the case of the Sir Moses Montefiore Home but for the inquisition. There has never been any wavering in the courts of any country in holding that such proceedings were *in rem*, and that they were conclusive evidence of insanity, as to all contracts of his positive agreements made after the inquisition. *Banker* v. *Banker*, 63 N. Y. 409. The safety of society and of the lunatic requires this to be the law. Otherwise there would be no protection for the property of these unfortunate people. It is true that when a subsequent will is in question the fact of actual unsoundness will be inquired into, the inquisition in such case being only a presumptive evidence of insanity. *Lewis* v. *Jones*, 50 Barb. 645. But the reason of that exception (which is by no means thoroughly established) is that such a writing is not a contract *inter partes*, and does not require the same degree or extent of mental capacity as it does to make a contract to take effect at once where the insane person is on one side, and on the other dealing with him is a person in possession of his faculties, who consults only his own interests. This exception to the rule may stand on the distinction, now well settled, between the two classes of contracts. *Parfitt* v. *Lawless*, L. R. 2 Prob. & Div. 462; *Walker* v *Smith*, 29 Beav. 394; Pol. Cont. (Amer. Ed.) 526, note *d; Wadsworth* v. *Sharpsteen*, 8 N. Y. 388, 395. But this exception does not change the rule as to gifts and other executed contracts, which are utterly void. *L' Amoureux* v. *Crosby*, 2 Paige, 422; *Wadsworth* v. *Sharpsteen*, 8 N. Y. 388. The rule has never been otherwise in this state, although it is different in some of the other states. *Den* v. *Clark*, 18 Amer. Dec. 417, and note.

The rule being thus established in this state for the protection of our citizens, it cannot, of course, be relaxed for the benefit of a citizen of another state who, even in ignorance of the inquisition, contracts with the lunatic. While the above rule as to the conclusiveness of these proceedings applies in every case in which the committee has been appointed and qualified, and has taken possession of the estate of the lunatic, there must, I think, be some limitation of the rule in cases where that has not been done. The statute presumes that the state of insanity, like every other sickness, will not be continuous, and it provided a way to discharge the committee and restore his property to the lunatic, when he shall have been cured. Where no possession of property has been taken such proceedings are not necessary, and will not usually be taken. Still, I think that a judgment as to the physical or mental *status* of a person, while conclusive at the time it is found, may properly be controlled by the presumptions which are raised, and permitted to obtain in ordinary business affairs. We all know now that insanity, as distinguished at least from idiocy, is not incurable, but that people do frequently recover from it.

Starting with the fact that this inquisition conclusively shows the existence of such a state of mind, at the time it was taken, we may apply the knowledge which we have that there may be a recovery from it, and allow the party claiming against it to show that, by lapse of time or otherwise, the patient has recovered, and has become again able to contract. Where the property of the lunatic is in possession of a committee, this should be done before the court which appointed him on a motion to discharge the committee. But where the committee did not act, I see no objection to allowing the person who asserts present sanity to show the fact of recovery, not to avoid the inquisition, but to show the subsequent recovery. If I am correct in this, then the inquisition must be held to be conclusive evidence that Laudenbach was insane at the time it was executed, and that he remained so, with the right to any person dealing with him after to show a subsequent recovery, and thereby take away the effect of the inquisition. Such proof was received on the part of the two defendants, Ignatz Thalheimer and The Sir Moses Montefiore Home. It showed Laudenbach after he went to Chicago, and after he had gone to the Home, was sane and in his right mind, and that he was able to make or change the beneficiary to whom his insurance should be paid. That being so, the last designation is valid, and the fund should, as there directed, be paid to Thalheimer and the Home, share and share alike, and Mrs. Laudenbach is not entitled to share in it.

But it appears that she kept this fund alive from November, 1875, to December, 1877, by paying the assessments make upon the certificate, which she did without any idea that she was not entitled to share in the fund. This sum should in good faith be repaid to her, for her payment kept the certificate good. She paid, as appears, from November, 1875, to December, 1877, 34 assessments, of $2.05 each, or in all $69.70, which, with interest at 7 per cent. to January 1, 1880, and 6 per cent. after that day, is $128.13. This should be repaid to her out of the fund. The plaintiff, of course, should have its costs out of the fund. *Atkinson* v. *Manks*, 1 Cow. 691. The two defendants who get this fund should be allowed their costs. I am not satisfied that Mrs. Laudenbach was without justification in her defense, and she has saved her payments, and succeeded to that extent, and therefore I will not charge her with costs.