In the Matter of the Petition of JULIA BLEWITT for the
Appointment of a Committee, etc.

Before the court may proceed in lunacy proceedings, it is requisite that personal and written notice be served upon the alleged lunatic, in addition to the notice to relatives and others, required by the Code of Civil Procedure (§ 2325), unless upon a clear case showing it to be improper or unsafe to give such notice, an order has been made by the court dispensing with it.

Where, however, on appeal by an alleged lunatic from an order denying a motion to vacate a commission and proceedings in lunacy, which motion was based upon the ground of failure to give such notice, it appeared that the notice of motion was in the alternative demanding that the proceedings be vacated, or that an issue be awarded to try the fact of lunacy, and the Special Term, while refusing to vacate, made an order permitting the alleged lunatic to traverse the allegations in the petition and directing a trial of the issues by jury before the commissioners appointed in the lunacy proceedings, and where it appeared that upon a prior motion by the alleged lunatic to supersede the commission, on the ground that he was then of sound mind, the question as to his sanity, at the time the proceedings were instituted and at the time of the motion, was

fully presented by the affidavits, and the motion was denied, *held*, that said order should be affirmed on these grounds: *First*, in the proceedings instituted by the alleged lunatic, there was full opportunity given to present and litigate the question of his sanity, and it was so litigated and decided adversely to him without his raising any question of jurisdiction; *second*, the alternative relief asked for in the motion or more favorable relief had been awarded; *third*, said order placed the appellant in the same position as upon an original hearing upon the original petition; *fourth*, it was in the discretion of the court pending the traverse to let the inquisition and proceedings stand until the termination of the inquiry.

(Argued March 14, 1892; decided March 25, 1892.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made November 13, 1891, which affirmed an order made at Special Term denying the motion of James Blewitt, an alleged lunatic, to vacate and set aside a commission and proceedings in lunacy, and the appointment of a committee, on the ground that the alleged lunatic had no notice of the proceedings and that they were otherwise irregular. The notice of motion was made in the alternative, demanding that the proceedings should be vacated for the want of notice and other irregularities, or that an issue be awarded to try the fact of lunacy, etc.

The court, at Special Term, while denying the relief to vacate, made an order permitting the alleged lunatic to traverse the allegations of the (original) petition in the lunacy proceedings, and directed the trial of the issue before the commissioners appointed therein and by a jury. The lunacy proceedings were commenced in June, 1890, upon the petition of the wife of the alleged lunatic, supported by the affidavit of a physician. The petitioner alleged in her petition that her husband on the 21st day of April, 1890, was seized with a hemorrhage of the brain, resulting in a partial paralysis of the body, and that since said date he " has shown continuous symptoms of insanity and has been at times and frequently since the said 21st day of April, 1890, violent and dangerous to himself and those about him." It further alleged that the family consisted of the petitioner and her husband and two sons, all of whom resided

in the city of New York, and that her husband owned a house and lot in that city and was possessed of about $5,000 personal property. The affidavit of the physician attached to the petition confirmed the statement of the petition as to the condition of Mr. Blewitt, and alleged that "he shows pronounced symptoms of mental derangement, being excessively emotional, irrascible, incoherent and irrational," and he further stated that he considered him incompetent to manage his business or personal affairs. The court, upon the presentation of the petition, granted an order that a commission issue to three persons named "to inquire into the matters set forth in the petition," and also as to the value of the real and personal property of the alleged lunatic.

A commission was subsequently issued to the persons designated in the order, directing them to inquire by the oath of good and lawful men whether "James Blewitt, etc., is an insane and incompetent person, with or without lucid intervals, by reason of which infirmity he is incapable of governing himself or of managing his affairs," etc. They were further directed to cause a jury to be summoned and to give reasonable notice of the time and place of the execution of the commission to "James Blewitt, Julia Blewitt, his wife, Charles A. Blewitt and George A. Blewitt, his sons." The inquisition was taken on the 23d day of June, 1890, and it found that Mr. Blewitt was "an insane person with lucid intervals, but was incompetent and incapable of managing his business or personal affairs, or of properly taking care of his affairs, lands, tenements, goods and chattels;" and it also found in respect to his property, and who were his heirs and next of kin. The inquisition does not appear to have been formally confirmed, but on the 25th day of June, 1890, an order was made, entitled in the proceeding appointing his wife, Julia Blewitt, committee of the person and property of the alleged lunatic "during his insanity or incompetency, or until another committee shall have been appointed, upon her giving a bond," etc. The order purported to have been made upon affidavits of Julia Blewitt and Ed. Hamilton Cahill, annexed, "and on all

the proceedings heretofore taken in the above entitled matter, certified copies of which are hereto annexed." There was no proof in the papers upon which the order was made appointing the committee of any notice having been given to the alleged lunatic at any stage of the proceedings, and it is set forth in the affidavit of Mr. Blewitt, on which the present proceeding is taken, that no notice was served on him at any time, and that the first intimation he had that any such proceedings had been taken was in November, 1890. Mrs. Blewitt, in her opposing affidavit in the present proceeding, states that she received from her attorneys who conducted the original proceedings, a written notice dated June 21, 1890, directed to her husband, herself and their two sons, notifying them that the commission would be executed on the 23d day of June, 1890, at four o'clock of the afternoon of that day. Her affidavit then proceeds as follows : " On Sunday, June 22d, went into her husband's room and informed him that she had applied to the court to have a committee appointed so that his property would be secure and the business continued, and that the hearing would take place on the next day at the court-house at four o'clock. Deponent further says that the said James Blewitt was confined to his bed at this time, and in a very weak condition both mentally and physically, and deponent has considerable doubt whether the said James Blewitt has sufficient mental capacity to understand the purport of said communication."

It appears in the papers on the appeal that prior to the motion now under review, and in January, 1891, the alleged lunatic made a motion before Mr. Justice INGRAHAM, to supersede the commission in question and proceedings, on the ground that he had recovered from the attack of April, 1890, and "is now (at the date of the motion) of sound mind and understanding."

Numerous affidavits were presented on that motion in behalf of the alleged lunatic, of physicians and other persons, tending to show that when the original proceedings were taken (in June, 1890), he was of sound mind and was so at the date of

the motion.   In opposition affidavits of physicians and of Mrs.
Blewitt were presented, tending to show that he was insane
when the proceedings were instituted, and so continued.
Judge INGRAHAM denied the motion.

The present motion was made in February, 1891, after the
denial of the former motion.

*Isaac N. Miller* for appellant.   The court had no jurisdic-
tion to order a commission.   (Code Civ. Pro. §§ 2320, 2325,
2335 ; *In re Payn*, 8 How. Pr. 222.)   The order appointing
a commission was insufficient.   (Crary's N. Y. Spec. Pro. 155,
536 ; Fiero's Spec. Pro. 390 ; 6 Wait's Pr. 414.)   The inquisition
was irregular because no notice was given to James Blewitt.
(*In re Holmes*, 4 Russ. 82 ; *Morton* v. *Simms*, 64 Ga. 298 ;
*Chase* v. *Hathaway*, 14 Mass. 122 ; *In re Tracy*, 1 Paige,
580 ; *In re Petit*, 2 id. 174 ; *In re Church*, 64 How. Pr. 393.)
The inquisition was not confirmed.   (Code Civ. Pro. § 2336 ;
*In re Payn*, 8 How. Pr. 225 ; *In re Baird*, 8 N. Y. 493 ;
*Viets* v. *U. N. Bank*, 101 id. 569.)   There is no record of
the proceedings on the inquisition.   (Code Civ. Pro. § 825 ;
*Fiske* v. *Twigg*, 5 Civ. Pro. Rep. 41 ; *In re Baird*, 8 N. Y.
S. R. 493.)   The order appointing the committee was irregular.
(*Scheller* v. *Malbie*, 11 Civ. Pro. Rep. 304.)   The inquisition
was erroneous.   (*In re DeMelt*, 27 Hun, 480 ; *In re Cook*,
25 N. Y. S. R. 64 ; *Dominick* v. *Dominick*, 10 id. 32.)   The
entire proceedings should be vacated and set aside.   (*Yates*
v. *Guthrie*, 119 N. Y. 492.)

*Lorenzo Semple* for respondent.   The allegations of the
petition and accompanying affidavit were sufficient to give the
court jurisdiction of the subject-matter of the inquiry.   (Code
Civ. Pro. §§ 2320, 2325, 2327.)   The failure of the petitioner
to give the alleged lunatic notice of the presentation of the
petition to the court was not a jurisdictional defect.   (Code
Civ. Pro. § 2320 ; *In re Mason*, 1 Barb. 436 ; *In re Zimmer*,
15 Hun, 216 ; *In re DeMelt*, 27 id. 482.)   The irregularity
was cured by the proceedings brought by James Blewitt " In
the Matter of the Petition of James Blewitt that he be

Adjudged Sane." (*In re DeMelt*, 27 Hun, 482.) The final order appointing Julia Blewitt committee of the person and property of James Blewitt was made upon certified copies of all the former proceedings, and was a confirmation of the proceedings by the court. (Code Civ. Pro. § 2336.) An inquisition will not be set aside for mere irregularity where there is no doubt of the lunacy. (*In re Rogers*, 9 Abb. [N. C.] 141.)

ANDREWS, J.  The jurisdiction which formerly was vested in the chancellor over the person and estate of lunatics, is now exercised by the Supreme Court. But the Supreme Court exercises the power under the same rules as appertained to and regulated the jurisdiction of the chancellor, subject to such statutory provisions on the subject as are contained in the Code of Procedure. (Code, § 2320 *et seq.*) The power of the court to appoint a committee of the person and estate of a lunatic is very essential; but it should be exercised with scrupulous regard to the rights of the alleged lunatic and under the protection which attend other judicial proceedings affecting person or property, modified only so far as the peculiar nature of the inquiry and the condition of the alleged lunatic may render modification necessary. The fact of lunacy must be ascertained judicially before the court can deprive the lunatic of the custody of his estate or submit his person to the control of a committee. The proceeding for the appointment of a committee is no exception to the rule that the person proceeded against must have notice of the proceedings to give validity to an adjudication against him. Where the lunacy was of such a character as to wholly deprive the lunatic of his understanding, and this was made to appear to the court on the initiation of the proceedings, it was the practice in chancery for the chancellor to direct notice of the proceedings to be served on some relative or other person in order that opportunity might be afforded to protect the interests of the alleged lunatic. The Code now prescribes that in all cases the court must require notice to be given of the presentation of the petition in lunacy proceedings, to the husband or wife, or to one or more relatives, or to

an officer specified, unless sufficient reasons are set forth in the petition or accompanying affidavits for dispensing with such notice. (Code, § 2335.) This section does not touch the question of the right of the alleged lunatic to have notice also. It was said by the chancellor in *Matter of Tracy* (1 Paige, 580), that if there "were any peculiar circumstances in the case which rendered it improper or unsafe to give notice to the party as in some cases of furious madness, the facts should be stated in the application to the court so that a provision might be inserted in the commission dispensing with the necessity of notice." In our opinion a very clear case should be made before the court should proceed in lunacy proceedings, in the absence of actual personal and written notice to the party, and that unless such a case is made by the petition or affidavits, and an order made by the court dispensing with personal notice and providing for notice to relatives or others in lieu of personal notice an adjudication in the absence of such notice should be set aside. The cases must be very rare in which a notice may not be served on the alleged lunatic, and it seems to us the better practice would be to require service of notice upon the party (if within the jurisdiction) in all cases, in addition to notice to relatives and others, as required by section 2325 of the Code. Attempts by interested persons to get control of the person and property of another by the aid of lunacy proceedings, or proceedings on the ground of habitual drunkenness are not infrequent, and no precaution should be omitted which may apprise the party of the proposed action and enable him to appear and defend. The authorities and text writers assume that the party proceeded against should have notice of the time and place of executing the commission. (*In re Tracy, supra; In re Petit*, 2 Paige, 174; *Chase v. Hathaway*, 14 Mass. 222; 2 Barb. Ch. Pr. 231.)

In the present case there was no ground presented in the petition why the alleged lunatic could not be served with notice, and as his insanity was with lucid intervals there is no reason for supposing that notice would have been useless. We are of opinion that the proceeding and adjudication were

invalid for want of notice to the party. The statement of Mrs. Blewitt that she informed her husband on the day before the inquisition was taken, that she had applied to the court to have a committee appointed and that the hearing was appointed for an hour on the next day, was not notice within the requirement. It would be dangerous to bind a party by a notice so informal. There is no reason to suppose that these proceedings were instituted by the petitioner in bad faith, but the due administration of justice and the possible grave injuries which may flow from irregular proceedings in these cases, make it proper for courts to guard them with great strictness, and to require an observance of all practicable safeguards against fraud and injustice. We have concluded that the order appealed from may be affirmed without weakening the principle which we have announced, on these grounds: *first*, that in the proceedings instituted before Judge INGRAHAM by the alleged lunatic, there was a full opportunity afforded him to present and litigate the question of his sanity, and it was litigated and decided adversely to him without his raising any question of jurisdiction; *second*, that the appellant in his present motion asked alternative relief, viz., that the proceedings should be vacated, *or* that the petitioner be permitted to traverse the inquisition, which latter relief, or relief more favorable has been awarded him; *third*, that the order below allows the appellant to traverse not the inquisition, but the original petition, thereby putting him in the same position as upon an original hearing thereon, and *fourth*, that it was discretionary with the court, pending the traverse, to let the inquisition and proceedings stand until the termination of the inquiry. (*In re Tracy, supra.*)

The other objections taken to the procedure which resulted in the appointment of a committee are not, we think, available as a ground of reversal.

The orders of the Special and General Terms should, therefore, be affirmed.

All concur.

Orders affirmed.