## CHALONER v. SHERMAN.

(Circuit Court of Appeals, Second Circuit. June 5, 1914.)

No. 202.

1. INSANE PERSONS (§ 26*)—COMMITTEE—ACTION FOR DAMAGES—ISSUES.

Where a person who had been adjudged insane in proceedings in a state court brought suit against his committee to recover damages, the plaintiff's present mental condition could not become an issue in the case unless the trial court was justified in setting aside the order adjudging plaintiff insane on collateral attack, and thereupon defendant had introduced some evidence of present incompetency as an affirmative defense.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 35, 36; Dec. Dig. § 26.*]

2. INSANE PERSONS (§ 26*)—APPOINTMENT OF COMMITTEE—REGULARITY—COLLATERAL ATTACK.

In a suit by an insane person against his committee to recover damages, evidence as to plaintiff's mental condition at the time the committee was appointed was inadmissible.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 35, 36; Dec. Dig. § 26.*]

3. INSANE PERSONS (§ 26*)—COMMITTEE—ACTIONS—EVIDENCE.

Where, in an action by an insane person against his committee for damages, it appeared that defendant was appointed as successor to a committee appointed in a de lunatico proceeding had in 1899, evidence that plaintiff was lured into the state in 1897 that he might be there adjudged insane was immaterial.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 35, 36; Dec. Dig. § 26.*]

4. INSANE PERSONS (§ 26*)—INQUISITIONS—JUDGMENT—COLLATERAL ATTACK.

Where proceedings were instituted against plaintiff in 1899 for the appointment of a committee on the ground that he was insane, and a committee was duly appointed, whether he was at that time a resident of Virginia or New York was a question to be determined in that proceeding, and having been determined the judgment on such issue could not be collaterally attacked.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 35, 36; Dec. Dig. § 26.*]

5. INSANE PERSONS (§ 8*)—DE LUNATICO PROCEEDINGS—JURISDICTION.

Code Civ. Proc. N. Y. § 2323, provides that, where an application for the appointment of a committee of an insane person is made to the Supreme Court, it shall be made within the judicial district where the person alleged to be incompetent resides, or if he is not a resident of the state or his place of residence cannot be ascertained, where some of his property is situated or the state institution is situated in which he is an inmate. *Held*, that the venue of such a proceeding is entirely within the control of the state, and hence, where plaintiff was within the state and had property there when proceedings were instituted to have a committee appointed for him on the ground that he was insane, the court had jurisdiction, though he was then a resident of Virginia.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. § 16; Dec. Dig. § 8.*]

6. INSANE PERSONS (§ 26*)—INQUISITIONS—JUDGMENT—CONCLUSIVENESS.

In a suit by a person who had been adjudged insane against his committee to recover damages, evidence that the determination of the proceeding to appoint the committee was based on perjurious testimony was inadmissible.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 35, 36; Dec. Dig. § 26.*]

7. INSANE PERSONS (§ 26*)—INQUISITIONS—JUDGMENT.

Failure of a person alleged to be insane to appear after due notice in de lunatico proceedings for the appointment of a committee could not affect the validity of the adjudication.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 35, 36; Dec. Dig. § 26.*]

8. INSANE PERSONS (§ 26*)—INQUISITIONS—JUDGMENT—COLLATERAL ATTACK.

Where plaintiff was duly notified of de lunatico proceeding against him for the appointment of a committee, the propriety and sufficiency of the notice could not be questioned in a subsequent action by plaintiff against his committee to recover damages.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 35, 36; Dec. Dig. § 26.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

9. INSANE PERSONS (§ 39*)—COMMITTEE—FILLING VACANCY—NOTICE.

An order appointing defendant as committee of an insane person in the place of one who resigned was not void for failure to give notice thereof to the insane person.

[Ed. Note.—For other cases, see Insane Persons, Dec. Dig. § 39.*]

10. INSANE PERSONS (§ 29*)—RECOVERY—PROCEEDINGS.

Where a person who had been adjudged insane has recovered, such fact must be brought to the attention of, and application for relief made to, the court of original jurisdiction.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 42, 140, 150; Dec. Dig. § 29.*]

In Error to the District Court of the United States for the Southern District of New York.

This cause comes here upon writ of error to review a judgment of the District Court, Southern District of New York, entered upon the verdict of a jury directed by the court in favor of defendant in error, who was the defendant below. Affirmed.

W. D. Reed, of New York City, for plaintiff in error.

J. H. Choate, Jr., of New York City, for defendant in error.

Before COXE and ROGERS, Circuit Judges, and MAYER, District Judge.

MAYER, District Judge. Chaloner, who was adjudicated an incompetent by the Supreme Court of the state of New York in 1899, brought this action in 1904 to recover damages against Sherman, who was appointed his committee in 1901, for alleged wrongful withholding of and refusal to turn over on April 4, 1904, Chaloner's property then in Sherman's custody as committee.

The numerous assignments of error, because of exclusion of testimony by the trial court, are based upon the theory that this court has power to set aside the judgment of the New York Supreme Court. The sole question is whether that judgment is void or was procured by extrinsic fraud so as to subject it to a successful collateral attack in another jurisdiction.

On March 10, 1897, an ex parte order was made by a justice of the New York Supreme Court, committing Chaloner as an insane person to the institution known as Bloomingdale Insane Asylum at White Plains, Westchester county. This order was in accordance with the Insanity Law of New York (Laws of 1896, c. 545) which permits a commitment without notice and that statute has been held to be constitutional. Sporza v. German Savings Bank, 192 N. Y. 8, 84 N. E. 406; Matter of Walker, 57 App. Div. 1, 67 N. Y. Supp. 647.

While an inmate of that institution under the commitment, a proceeding looking to the appointment of a committee was commenced by a petition presented by two of his brothers to the Supreme Court in the county of New York. This petition was accompanied with the affidavits of several physicians as to the mental condition of the alleged incompetent, and a notice of motion that on May 19, 1899, the petitioners would apply to the court for an order granting the prayer of the petition. Thereupon, on May 9, 1899, the court made an order requiring personal

service on Chaloner of this order, the notice of motion, petition, and affidavits.

On the same day, viz., May 9, 1899, personal service was made on Chaloner at the Bloomingdale Asylum.

On May 19, 1899, when the motion was returnable, no one appeared in opposition thereto, and the court, as provided by sections 2327 and 2328 of the·New York Code of Civil Procedure, ordered that a commission in the nature of a writ de lunatico inquirendo be issued out of and under the seal of the court directed to three commissioners to inquire by a jury of the county of New York into the competency of the alleged incompetent, and it was also ordered that the sheriff be instructed to summon a jury in the manner required by law. It was further ordered that the commission be executed in the county of New York and that at least five days' previous notice of the time and place of the execution of the commission be given to Chaloner and to the person having charge of him who, in this instance, was the medical superintendent of the asylum. It was further ordered that the commissioners might, in their discretion, dispense with Chaloner's attendance unless the jurors or any of them should require such attendance.

Notice dated May 23, 1899, that the commission would be executed on June 12, 1899, at 4 p. m., at the New York county courthouse, was personally served on both Chaloner and the medical superintendent on June 6, 1899.

The commissioners took their oath on June 5, 1899, and it was filed on June 12, 1899.

The jury was duly summoned for and sat with the commissioners on June 12, 1899, at the New York county courthouse. Chaloner did not appear in person or by attorney. Counsel for the petitioners stated that, if after hearing the testimony the jury desired the presence of the alleged incompetent, he would be brought before them. Testimony was taken as to the mental condition of Chaloner and as to the property owned by him.

The medical superintendent testified that Chaloner said he was physically unable to be present.

Counsel for petitioners again said that he thought it entirely proper to take an adjournment to any day agreeable to the commissioners in order to produce Chaloner before the jury, but the jury stated that they did not desire his production. Thereupon counsel called the jury's attention to the order of the court requiring the presence of Chaloner if any of the commissioners or the jurors so wished.

Thereafter the medical superintendent was again called and stated that to produce Chaloner would temporarily do him harm mentally and that Chaloner "said he did not want to come down." Dr. Carlos F. MacDonald then testified that to call Chaloner would "tend to aggravate his mental condition."

Finally, the matter was submitted to the jury and a verdict was returned that Chaloner was incompetent.

A notice of motion for June 23, 1899, for an order confirming the inquisition and appointing Prescott Hall Butler, committee of the person and estate of Chaloner, was personally served on him on June 15, 1899, at the asylum.

There being no opposition, the court, on June 23, 1899, made and filed its decretal order of confirmation and appointed Butler the committee. Butler subsequently resigned, and his resignation was ordered accepted by the court on November 19, 1899, and Sherman, the defendant here, was appointed in his place.

Chaloner claims that he is and at all times was a resident of Virginia and for that reason his sanity could not be determined in New York; that he was lured into the state of New York in 1897 and was committed improperly without notice; that the inquiry de lunatico in 1899, in any event, should have been in Westchester county; that the notice thereof was insufficient; that the decretal order and all the proceedings were void, among other reasons, because he' was not present before the commissioners and the sheriff's jury; that he always was and now is sane and was so declared in 1901 by a court of competent jurisdiction in Virginia; and that therefore the appointment of Sherman was void.

[1] Insanity is, of course, not necessarily a continuing condition, but the trial court was right in holding that Chaloner's present condition never became an issue in the case and could not have become so, unless the court below had been justified in collaterally setting aside the decretal order.

Then, if defendant had adduced some evidence of present incompetency as an affirmative defense, and then only would the present mental condition of plaintiff have been an issuable fact.

[2] The trial court was likewise right in excluding testimony to show the mental condition of Chaloner in 1899, for that issue could not be litigated in this action and was solely for the New York courts. Matter of Curtiss, 137 App. Div. 584, 122 N. Y. Supp. 468; Id., 199 N. Y. 36, 92 N. E. 396.

[3] Whether or not, in 1897, plaintiff was lured into this state, was immaterial because defendant was appointed not by virtue of the 1897 proceeding but as successor to the committee appointed in the 1899 proceeding.

[4, 5] Even assuming that plaintiff was at all times a resident of Virginia, the question of his residence was one of the facts in issue in the 1899 proceedings and having been there adjudicated cannot be collaterally attacked (Kinnier v. Kinnier, 45 N. Y. 535, 6 Am. Rep. 132); but, in any event, the New York court had jurisdiction in view of the fact that plaintiff was within the state and had property therein when the proceedings were commenced.

Section 2323 of the New York Code of Civil Procedure provides:

"An application for the appointment of such a committee must be made by petition, which may be presented by any person. Except as provided in the next section (relating to incompetents in state institutions) where the application is made to the Supreme Court, the petition must be presented at a Special Term held within the judicial district, or to a justice of said court within such judicial district at chambers, where the person alleged to be incompetent resides; or if he is not a resident of the state or the place of his residence cannot be ascertained, where some of his property is situated, or the state institution is situated of which he is an inmate."

The venue of a proceeding is entirely within the control of a state in respect of subject-matter over which a state court has sole juris-

diction and the fact that Chaloner had real property in New York county was enough to satisfy the statute. Matter of Gause, 9 Paige, 416; Emmerich v. Thorley, 35 App. Div. 452, 54 N. Y. Supp. 791.

[6] The trial court was also correct in excluding testimony offered to show that the testimony in the 1899 proceeding was perjurious.

The question whether the alleged perjurious testimony was true was necessarily adjudged by the New York court in finding the plaintiff incompetent. This court cannot determine whether or not the testimony in question was perjured without trying over again the very same issue which the New York court decided when it made the decretal order complained of. It is well settled that the fact that a judgment is procured by false testimony does not open it to collateral attack. United States v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93; Freeman on Judgments (4th Ed.) § 334.

[7] The failure of a person affected by an order or judgment to appear after due notice cannot, of course, affect the validity of an adjudication. Simon v. Craft, 182 U. S. 427, 21 Sup. Ct. 836, 45 L. Ed. 1165.

The record shows that scrupulous care was exercised in serving the various notices of motions and proceedings on Chaloner.

If the trial judge had received in evidence the excluded letter written in July, 1897, by Chaloner to Woods, a Virginia attorney, it would have appeared that he then wrote:

"It is unnecessary for me to say that nothing but the most unexpected and dire necessity could induce me to go before a 'sheriff's jury,' the usual manner, in the state of New York, of carrying out a habeas corpus proceedings for a man who has been declared insane by a judge. I object to this for three .reasons. First, because it is not the right way to go about it. I am not a citizen of the state of New York, and therefore the 'sheriff's jury' does not apply to my case. Second, because I do not desire the notoriety consequent upon such a proceeding. Third, because my family are most anxious that I should go before a 'sheriff's jury' in the desperate hope that the said jury would believe what they, and the doctors, said about me. In which case the jury would pronounce me insane, and hand me over to the custody of my family, who could then apply for and receive into their hands my property and the management thereof—under the name of a commission."

And it further appears, from Chaloner's deposition excluded by the trial judge, that he absented himself from the 1899 proceeding by his own choice. If therefore he knew at that time what he was doing, he deliberately failed to appear when full opportunity was afforded to him so to do.

[8] But the propriety and sufficiency of the notice as matter of law are no longer open to question. Matter of Blewitt, 131 N. Y. 541, 30 N. E. 587; Gridley v. College of St. Francis Xavier, 137 N. Y. 327, 33 N. E. 321.

[9] Finally, in regard to the failure to give Chaloner notice of the resignation of Butler and the appointment of Sherman as committee, it appears that there is no statutory requirement of notice in such a proceeding, and it would seem that notice to the committee of a proposed removal is the only notice required. Matter of Andrews, 192 N. Y. 514, 85 N. E. 699.

But, if notice were required, the failure to give it is an irregularity which must be dealt with by the state court of original jurisdiction. Matter of Osborn, 74 App. Div. 113, 77 N. Y. Supp. 423; Matter of Porter, 34 App. Div. 147, 54 N. Y. Supp. 654.

[19] Our conclusion is that the judgment of the New York court was not a void judgment, and it must remain valid until reversed or set aside by the courts of New York. This has never been attempted, and therefore the judgment of the Supreme Court of New York remains to-day in full force and validity. If the petitioner has recovered and is no longer insane, this fact should be brought to the attention of the state court, and if sanity is established the court will undoubtedly restore the plaintiff to his rights. So, too, even if some of the requirements of the statute had been omitted or neglected or insufficient evidence of insanity was adduced, relief must be obtained in the court which appointed the committee. If a prima facie case were made out, we have no reason to doubt that the state courts would grant appropriate protection to guard the plaintiff from arrest while attending such proceeding, just as this court did in this case. Chanler v. Sherman, 162 Fed. 19, 88 C. C. A. 673, 22 L. R. A. (N. S.) 992.

But, however this may be, we think that this court has not jurisdiction to set aside or annul the judgment of the state Supreme Court rendered in a proceeding in which it obviously had jurisdiction.

The judgment is affirmed, with costs.