BOWMAN *vs.* A. T. & E. M. TEALL.

Where *common carriers* have been guilty of *negligence* whereby the owner of goods has sustained injury, the subsequent *acceptance* of the goods by the owner is *no bar* to an action ; but may be given in evidence in *mitigation* of damages.

Nothing short of a *release*, or the acceptance of *something in satisfaction* is a bar.

The *freezing* of our canals or rivers is such an intervention of the *vis major* as excuses the delay of the common carrier by water ; but he is bound to exercise ordinary forecast in anticipating the obstruction ; must use the proper means to overcome it ; and exercise due diligence to accomplish the transportation he has undertaken, as soon as the obstruction ceases

to operate, and in the mean time must not be guilty of negligence in the care of the property.

[ *307 ]  *Interference of the owner by giving directions as to the care of property, the transportation of which is interrupted by the closing of a river, is *not* in itself an acceptance of the property; it is merely *evidence* of acceptance, to be submitted to a jury, with the other circumstances of the case.

THIS was an *action on the case* tried at the Albany Circuit in April, 1839, before the Hon. JOHN P. CUSHMAN, one of the circuit judges.

It was brought against the defendants for negligence as *common carriers*, in the transportation of 1000 bushels of salt, which they had undertaken to carry from New-York to Albany. The salt was received by the defendants at New-York. on the first or second day of December, 1836, on board of a lake boat, which left New-York on the third day of December, and was towed by a steamboat as far north as *Red-Hook*, when she was cast off by the steamboat in consequence of the obstruction of ice in the river. The lake boat was, however, worked up as far as Catskill, and there left by the master in charge of a person employed by him. On *Friday*, the *twenty-eighth* day of December, the plaintiff and one of the defendants were at Catskill, and saw the salt. The plaintiff, on that occasion, told one Bowman, a resident of Catskill, that he and Teall were going to Hudson to sell the salt, and if he did not hear from him before the following *Monday*, to take the salt out of the boat and store it. The boat sprung a leak on *Saturday night*, when Bowman took out the salt and stored it. Subsequently he removed it to another place, where, during the winter, it was overflowed by a freshet and the principal part of it melted. The contract to transport the salt was made in New-York about the 20th November, 1836. There was evidence tending to show negligence in starting the salt from New-York, and afterwards in not getting up the boat from Catskill. A steamboat towing four boats, left New-York on the *tenth* of December, and arrived in Albany on the third day thereafter, with her boats in tow. On the other hand there was evidence tending to rebut the proof of negligence. The counsel for the defendants requested the judge to charge the jury : 1. that if they believed that the plaintiff received the salt, or exercised any dominion or [ *308 ]  *direction over it at Catskill, that he was not entitled to recover; and 2. that if they believed from the testimony of *Barlow*, that the plaintiff was the person who told him to store the salt, if he did not hear from him on or before Monday, that the defendants were not liable. The judge refused so to charge, and for such refusal, the defendants excepted. The jury found for the plaintiff. The defendants, on a bill of exceptions, moved for a new trial.

*S. Stevens,* for the defendants.

New-York, May, 1840.—Bowman v. Teall.

*S. Dutcher, Jun.* and *I. Harris,* for the plaintiff.

*By the Court,* COWEN, J.   The first four points made by the defendants' counsel relate mainly to the finding of the jury on the question of negligence.. It must be taken that this question was properly submitted to them, · and, on the evidence, most certainly we should not interfere with the verdict, even if the present motion were founded on a case ; but, depending as it does on a bill of exceptions, the points in respect to weight of evidence have no application.   The remark at the conclusion of the fourth point insisted on by the counsel for the defendants, that, if the plaintiff *accepted the salt,* on the boat stopping at Catskill the defendants are not liable, is correct, if there had then been no negligence.   What the judge did with the question in that view, the bill does not state ; of course, we must presume, that he submitted it to the jury, that being most favorable for the defendants.

The only two points which can be raised relate to the successive requests to charge : 1.  that, if the jury believed the plaintiff received the salt or exercised any dominion over it, or gave, any direction at Catskill, concerning it, this defeated the action ; and 2.  that, if they believed Bowman told Barlow to store the salt, as testified by him, that would have the effect to defeat the plaintiff.   Both requests were founded on principles which are entirely false.   The *acceptance* of the salt at Catskill, taken in the abstract would not, as I have already intimated, discharge the defendants.   To *have that effect, it must have been accepted, or in other words,*   [ *309 ] taken out of the defendants' custody by the plaintiff, in the fall or winter, and before any cause of action had arisen, by reason of any negligence which may be supposed imputed to the defendants by the verdict. The request for instructions should therefore have been thus restricted. Nothing is better settled than that, after an injury has been committed, the cause of action cannot be discharged by any act of the plaintiff short of .a release, or acceptance of something in satisfaction.   By receiving the salt even in the spring, the damages, I admit; would have been mitigated to the extent of its then value, which at best could not have been much, after its having been subjected to the action of a winter freshet.   This distinction occurs every day in *trover* and *trespass de bonis asportatis,* where the goods have been delivered to and accepted by the plaintiff after the conversion or tort has been committed.   *Baylis* v. *Usher,* 4 *Moore & Payne,* 790.   (*S. C. imperfectly reported,* 7 *Bing.* 153,) is still nearer in point.   That was trespass on the case for a wrongful distress, where the property had never been removed; but the plaintiff had the free use of it, and it was finally restored to him before suit brought.   Yet the action was held to lie.   Bosanquet, J. 4 *Moore & Payne,* 791, 2, adverted to, and applied the general principle.   He said, " a right of action once vested can only be destroyed by a release under seal, or by the receipt of something in satisfaction of the

wrong done ; and, therefore, the tenant does not waive his right of action for an excessive distress, though he enter into a written agreement with his landlord respecting the sale of the effects seized." The latter had before been held, in so many words, by the king's bench. *Willoughby* v. *Backhouse*, 4 *Dowl. & Ryl.* 539. 2 *Barn. & Cress.* 821, *S. C.* And this latter case was but a repetition of what the C. B. had held at a previous term of the same year, A. D. 1824.' *Sells* v. *Hoare*, 8 *Moore*, 451. 1 *Bing.* 401, *S. C.* Yet in the last case the damages were very trifling, only one shilling, as the jury found. The principle was fully considered in *Willoughby* v. *Backhouse.* Bayley, J. said there was no such thing as a [ *310 ] man's *waiving his right of action, when once a wrong had been committed. And it may indeed be asked who ever heard of such a thing, being held ? Now it will be seen that if the learned judge had, in the case at bar, charged as he was at first desired to do, the jury might have been entirely cut off from the consideration of two important questions : one, whether the defendants had been guilty of negligence in not transporting the salt to Albany ; and the other, as to negligence in the manner of their causing it to be stored for the winter, if Barlow be taken as having acted for them. The freezing of our canals or rivers has indeed been held such an intervention of the *vis major*, as excuses the delay of the common carrier by water. But still he is bound to exercise at least ordinary forecast in anticipating the obstruction ; to exert the proper means for overcoming it ; and to exercise due diligence in accomplishing the transportation so soon as it ceases to operate. In the mean time, he must not be guilty of negligence in taking care of the article detained. Indeed these obligations are not questioned.

But none of the matters, in the form proposed, would have been admissible even in mitigation of damages. The proposition was, that an acceptance or exercise of any dominion over, or giving any directions, would cut off all right of recovery. Now the exercise of dominion or giving directions might be acts of a very equivocal character, as in truth they were here, when viewed in the light of Barlow's testimony. The plaintiff might have been speaking for himself, or for one of the defendants, the latter still having the salt in their charge ; or he might have been speaking from that interest which every prudent owner would feel in having a perishable article well taken care of, although it might be at the risk of another. Interference, by exercising dominion or giving directions, might, under circumstances, be evidence of an acceptance, but never an acceptance of itself. And this too is an answer to the second call for instructions, which indeed is very nearly identical with the first. To have made either available in mitigation, it should have proposed acceptance for that purpose alone.

[ *311 ]     Even if the introductory part of the first call for *instructions, viz. an acceptance in the abstract, would have been a full de-

New-York, May, 1840.—Bowman v. Teall.

fence, the effect of the request to have it submitted to the jury was destroy-
ed by this being complicated with other alternatives which followed in the
same proposition. The request should have been to submit the naked ques-
tion of acceptance ; not that, or one of several other matters inadmissible.
A request to charge that one of several matters make a good defence, where
each would not do so, may be simply disregarded by the judge, though any
one of the matters would, of itself, be sufficient. He would rightly prefer
to submit the latter to the jury, as I presume he did here, with the requisite
limitations of time and circumstance.

Another answer is, to my mind, equally satisfactory on both points, viz.
that the equivocal testimony of Barlow, on the point of any acceptance at all,
if it amounted to any thing, was so completely overcome by that of Strong
and Elton, as to demand that the point should be withheld from the jury.
Had they found an acceptance, I am quite sure we must have set aside the
verdict as against the weight of evidence.

A new trial must be denied.