(19 Misc. Rep. 59.)

## DECKER v. SEXTON et al.

(Supreme Court, Appellate Term, First Department.　December 28, 1896.)

1. PRINCIPAL AND AGENT—AUTHORITY OF GENERAL AGENT—WAIVER OF PRINCIPAL'S CONTRACT.

A general agent has no implied authority to waive a provision in a contract under seal, executed by the principal and his lessee, that the lease should not take effect until the principal certified in writing that he was satisfied with a certain chattel mortgage to be given by the lessee.

2. CONTRACTS—WAIVER—WHAT CONSTITUTES.

A chattel mortgage is not accepted by the filing thereof by the mortgage's attorney, so as to waive a provision of a contract between the mortgagor and mortgagee that, unless the mortgage should be a first lien, a lease executed by the mortgagee to the mortgagor should not take effect, where the attorney said he would file the mortgage subject to acceptance by the mortgagee after an investigation as to whether it was a first lien, such qualified acceptance being in no way inconsistent with an insistence on the contract.

3. TRIAL—DIRECTING VERDICT—UNCONTRADICTED EVIDENCE.

A verdict for plaintiff should be directed where his cause of action is supported by the testimony of an uncontradicted and unimpeached witness not interested in the result of the action.

4. LANDLORD AND TENANT—NOTICE TO END MONTHLY TENANCY—SUBTENANTS.

Notice to the tenant without notifying his subtenants complies with Laws 1882, c. 303, requiring notice to a monthly tenant of the landlord's election to terminate the tenancy as a prerequisite to summary proceedings.

5. LANDLORD AND TENANT—SUMMARY PROCEEDINGS—NEW TRIAL.

A summary proceeding is not an "action," within Laws 1896, c. 748, authorizing justices of the district court to set aside a verdict rendered "in an action."

Appeal from district court.

Summary proceedings by David H. Decker against Thomas E. Sexton and others to recover possession of premises known as "No. 55 Whitehall Street." From a final order made on a verdict in favor of defendants, plaintiff appeals. Reversed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

Townsend & Dyett (A. R. Dyett, of counsel), for appellant.

H. H. Browne, for respondents.

McADAM, J.　This was a proceeding by the landlord to recover possession of the premises known as "No. 55 Whitehall Street," this city, for holding over after the expiration of the term. The petition alleged a monthly letting from July 1 to August 1, 1896, by the landlord to Thomas E. Sexton, the tenant; the other parties being undertenants or assigns. The tenant, Sexton, did not appear. The other parties answered, denying the monthly letting and holding over alleged, and setting up a written lease dated April 13, 1896, executed by the landlord to Thomas E. Sexton, for five years from May 1, 1896. The monthly letting was made under the following circumstances: It appears that on April 13, 1896, the landlord entered into an agreement with Sexton, the tenant, by which he demised the premises in question for the term of five years from May 1, 1896, to May 1, 1901, at the yearly rental of $5,000 for the first year and $6,000 per year for the remaining four years, in equal monthly payments in advance. The premises prior to the demise had been occupied as a storage ware-

house, and by the agreement Sexton undertook to put and keep them in a proper condition for the purposes of an hotel business, and to that end agreed to make all necessary alterations and repairs in and about the premises, subject to the approval of the landlord. The agreement contains the provision that the tenant will not assign the lease, nor let or underlet the whole or any part of the premises, without the written consent of the landlord, under penalty of forfeiture and damages; and the seventh subdivision reads as follows:

"It is hereby understood and agreed by the said Sexton that·he will, immediately upon the execution of this lease, proceed to alter the said premises, subject to the approval of the said ·Decker as aforesaid, and to fit up and to furnish the said premises for the purposes of the business aforesaid at a cost not less than ·$5,000, and shall, when said alterations, fitting, and furnishing are completed, and on or before the first day of May, 1896, properly execute and deliver to the said Decker a chattel mortgage upon all of the personal property in the said building, including bar and bar fixtures, chandeliers and other gas fixtures, pool and billiard table or tables, and hotel and other furniture of every description in said premises, and of all of which said personal property the said Sexton shall deliver to the said Decker a full and true inventory on or before May 1, 1896. The said chattel mortgage shall be a first lien on said property, and shall be conditioned upon, and shall be held by the said Decker as collateral security for, the performance by the said Sexton of all the terms, conditions, and agreements of this lease by the said Sexton to be kept and performed, and for the payment by the said Sexton to the said Decker of the rent hereby reserved for the said leased premises. It is the intention of the parties hereto, and this instrument is executed by the said Decker upon the distinct understanding, that this lease shall be delivered to and held by Messrs. Townsend & Dyett, attorneys, of the city of New York, in escrow, and is to be delivered by them to the said Sexton, and is to take effect only from the time that the said Decker shall certify in writing to the said ·attorneys that he (the said Decker) has received the said chattel mortgage as above provided."

To enable Sexton to comply with this provision, and thereby make the agreement operate as a lease, it was orally agreed that the premises should be rented to Sexton from April 13, 1896, to May 1, 1896, and the tenancy thus created was with the like object renewed from May 1 to June 1, from June 1 to July 1, and from July 1 to August 1, 1896. To prevent any misunderstanding, and to obviate any question of waiver, an agreement in the following words was entered into:

"Received, N. Y., May 1, 1896, from Thomas E. Sexton, the sum of four hundred and sixteen and 66/100 dollars in full payment of the rent to June 1, 1896, of the premises No. 55 Whitehall street, in the city of New York. The time of the said Sexton to perform the terms and conditions of 'subdivision seventh' of the agreement of lease between said Sexton and myself, dated April 13, 1896, is hereby extended to June 1, 1896. The payment or acceptance of said rent or the execution of this paper is not intended to be, or to have the effect of, a delivery of the said lease, which is now held in escrow by Townsend & Dyett, Esqrs.                    David H. Decker.

"I hereby agree to the above extension upon the terms therein stated.
"N. Y., May 1, 1896.                    Thomas E. Sexton."

On June 1 and July 1, 1896, similar agreements were executed by which the time was extended to August 1, 1896, on the same condition. The landlord claimed that the terms and conditions of "subdivision seventh" were not complied with, in that Sexton did not execute to him a chattel mortgage upon the property therein par-

ticularly mentioned which became a first lien thereon, and that he, said Decker, in consequence had not certified in writing to the said attorneys that he had received the chattel mortgage as therein provided; and that for want of the delivery of such a mortgage and certificate the agreement had never taken effect as a lease, and that the tenant had never acquired any estate in the lands other than that conferred by the monthly hirings, which had expired August 1, 1896. It is apparent from the language of subdivision seventh and the three extensions that the landlord was not to be concluded on the subject of delivering the lease until he had expressed his satisfaction in regard to the mortgage agreed to be given him, for subdivision seventh expressly provides that the lease "is to take effect only from the time that the said Decker shall certify in writing to the said attorney that he (the said Decker) has received the said chattel mortgage as above provided." The objections to giving the certificate were not placed on grounds which were capricious. It was refused for reasons which would probably induce a man of ordinary prudence to act as Decker did. The objections were: (1) That there was already on record a chattel mortgage to the Hupfel Brewing Company for $2,080 on all the chattels and property in or upon the premises in question. This mortgage is dated April 30, 1896, payable one day after date, and was filed May 1, 1896. (2) That there were unpaid claims of mechanics and material men, which culminated in two mechanics' liens upon the property,—one by Sylvester A. Murphy, for $1,142, for making alterations and extensions in the building and furnishing materials and labor necessary for the same; and another, by John Murphy for $628.30, for plumbing and gas fitting work done in the building. (3) That Lord & Taylor had a large bill for materials furnished the premises, which had not been paid; and that a cash register on the premises had not been paid for, and the vendors, claiming a sale on the installment plan, had threatened to take it away. There was also a replevin suit pending to recover possession of part of the property put into the building by Sexton.

Sexton, the tenant, testified that the understanding with the landlord was that the hiring should be by the month, as stated by the landlord, and that when he (Sexton) should produce a satisfaction piece of the Hupfel mortgage, and bring evidence that the mechanics who did the work on the premises, and the dealers who had supplied the furniture, had been paid, the lease was to become operative, but not before. It was claimed by the undertenants that the Hupfel mortgage had been satisfied. But the evidence shows that, although a satisfaction piece had been executed and sent to the Limbeck & Betts Eagle Brewing Company, the party advancing the money for it, the delivery was not accepted by it, for that company insisted it was to have an assignment of the mortgage, and that it was to be held by it as security. Mr. Buster, the attorney for that company, testified that it was to have a first mortgage on everything in the place, and that the Hupfel Company had, by telephone, agreed to assign its mortgage to his company. The satisfaction piece was not placed on record for that reason, but was kept by the Limbeck Com-

pany as evidence of the fact that it was entitled to the benefit of the Hupfel mortgage, and was, in effect, the equitable assignee thereof. The undertenants also insisted that the claims of mechanics who subsequently acquired liens did not impair the security intended to be given to the landlord, but merely affected the lessee's interest in the premises. Even such an effect would be an impairment of the plaintiff's rights as mortgagee; and, independently of that fact, the liens, under the authorities, might be enforced even as against the freehold, upon the theory that the owner had by his agreement expressly authorized the repairs to be made. All that the statute requires as to the lienor's right to payment is that the labor shall be done upon or the material furnished for the building with the assent of the owner. Laws 1885, c. 342, § 1; Pell v. Baur, 133 N. Y. 377, 31 N. E. 224. The design of the act was to charge the land with debts contracted in improving it, if the owner consented thereto; and the contract itself, and the fact that the work was prosecuted under it with the owner's knowledge, authorize a finding of consent. Schmalz v. Mead, 125 N. Y. 188, 26 N. E. 251. A mechanic or material man has an inchoate right of lien from the time of doing his work or furnishing the material, which becomes complete on filing the notice required by statute. This contingent liability made the landlord interested in the payment of all mechanics and material men who furnished work or material to the alteration and improvement of the building. The contention of the undertenants that the unpaid bills for which liens had not been obtained would not have affected the landlord or the security of his mortgage is thus unavailing, for it was certainly not intended that the landlord should be obliged to defend replevin suits or foreclosure liens and the like for the protection of his rights in the premises; and all these might follow if the mechanics and material men were not paid. At all events, much of this was left by the language of subdivision seventh to the decision of the landlord, who was to have time to reflect upon the consequences, and was not to be concluded until he had first certified in writing that he had obtained a chattel mortgage which gave him a first lien on the property, according to the spirit and intent of the agreement. Under these circumstances it would seem that the estate of the tenant under the written lease never vested, and that the landlord was entitled to resort to the statutory remedy to remove the tenant and those holding under him by virtue of the oral agreement.

Even if these results followed, the undertenants maintain there was a waiver of all right on the part of the landlord to object, because, in a conversation had by one of them with the landlord's son, his general agent, the son had said that the Hupfel mortgage, being a brewer's mortgage, was of little or no consequence, and that he would speak to his father about it. There is no evidence that the subject was ever mentioned to the father, or that he had ever said or done anything which could be construed as an assent to any such proposition; and the son testified that he had never made any such statement. The son had no power by any such conversation to waive the privilege, which the landlord had reserved to himself, that he

should not be bound until he had first certified in writing that the chattel mortgage was satisfactory to him. The son might just as well have attempted, on some other contract made by his father respecting realty, to orally waive the giving of a first mortgage by the simple expression that a second was equally good. The difficulty is that the principal might not share the same opinion, and insist, as he lawfully might, that the contract under seal should be enforced as he made it. Besides, the conversation alleged was not had with the lessee, but with one of the undertenants.

The undertenants also insist that there was a waiver, because the mortgage to the landlord was filed July 17, 1896, and this was evidence of an acceptance of it under the contract. Mr. Levy, a clerk in Townsend & Dyett's office, explained this as follows:

"Mr. Sexton came into my office with Frederick H. Decker. They came there by appointment, for the purpose of executing that mortgage. The mortgage was read over to Mr. Sexton, and executed. I stated to Mr. Sexton that it would be held by me. * * * I even stated to him that I might file it for the purpose of having it on record for what it is worth, and in the meantime, or immediately after, I would have the record searched. If the mortgage proved to cover, in the first place, the property contemplated by the seventh subdivision of the lease, and proved to be a first lien on that property, and if, in addition to that, Mr. Sexton had satisfied all the mechanics' liens, the claims of the men that worked about the place, and proved to us that he had paid for all the property in that place, and which was embraced in the mortgage, that Mr. Decker would accept that as the mortgage under subdivision seventh of the lease. Mr. Sexton assented to that, and said all claims would be paid."

Frederick H. Decker, the landlord's son, and Sexton, the tenant, substantially corroborate this story. It also appeared that the mortgage had never been delivered to the landlord, that he had never seen it, that he did not direct the filing of it, and knew nothing of it except from what he had heard at the trial. It is difficult to found waiver on these facts. Waiver implies an election of the party to dispense with something of value, or to forego some advantage which he might, at his option, have demanded or insisted upon (Warren v. Crane, 50 Mich. 301, 15 N. W. 465; Insurance Co. v. Todd, 83 Pa. St. 275), and must be by one in possession of full knowledge of the material facts, and with intent to waive. 28 Am. & Eng. Enc. Law, 527; Bish. Cont. (Ed. 1887) § 792. The waiver must be supported by an agreement founded upon a valuable consideration, or the act must be such as to estop the party from insisting on the performance of the contract. Ripley v. Insurance Co., 30 N. Y. 164.

In Underwood v. Insurance Co., 57 N. Y., at page 505, the court said:

"The doctrine of estoppel lies at the foundation of the law as to waiver. While one party has time and opportunity to comply with a condition precedent, if the other party does or says anything to put him off from his guard, and to induce him to believe that the condition is waived, or that a strict compliance with it will not be insisted on, he is afterward estopped from claiming nonperformance of the condition. Unless there is some consideration for a waiver, or some valid modification of the agreement between the parties which contains the condition, I think there can be no waiver of a condition precedent, except there be in the case an element of estoppel."

And at page 506:

"The true rule, I think, is laid down in Ripley v. Insurance Co., 30 N. Y. 136, as follows: 'It seems to me that a waiver, to be operative, must be supported by an agreement founded on a valuable consideration; or the act relied on as a waiver must be such as to estop the party from insisting on performance of the condition.'"

See, also, Shapley v. Abbott, 42 N. Y., at page 448. These cases have not been questioned, except in their application to proofs of loss in insurance cases. Smith v. Insurance Co., 47 Hun, at page 40.

In Stenton v. Jerome, 54 N. Y., at page 488, the court said:

"It is a principle as old as the common law that a cause of action once vested can only be discharged by a release under seal, or the receipt of something in satisfaction."

See, also, McKnight v. Dunlop, 5 N. Y., at page 544, and cases cited; Christianson v. Sinfard, 19 Abb. Prac., at page 223; Baylis v. Usher, 4 Moore & P. 791; Bowman v. Teall, 23 Wend. 309; Willoughby v. Backhouse, 4 Dowl. & R. 539.

The agreement as to the lease was executed by the landlord personally, and not by the son as his agent, and the latter had no authority to alter its provisions contrary to his father's wishes. There being no proof that the landlord, by any act or word, personally waived the performance of the seventh subdivision of the lease, or any part thereof, waiver must be found in the alleged conversation with the son, or that defense must be deemed wholly unproved. The conversations with the son were objected to, and admitted under exception. The admissions or declarations of an agent are received against the principal, not as admissions or declarations merely, but as parts of the res gestæ; hence only such as accompany the transaction in which the agent acted can be proved, and what he said at a subsequent time is inadmissible. Luby v. Railroad Co., 17 N. Y. 131, 133; Thallhimer v. Brinckerhoff, 4 Wend. 394, 397; Fogg v. Child, 13 Barb. 246; Budlong v. Van Nostrand, 24 Barb. 25; Isles v. Tucker, 5 Duer, 393; Hubbard v. Elmer, 7 Wend. 446; Kelly v. Kelly, 2 E. D. Smith, 250; Vail v. Judson, 4 E. D. Smith, 165; Dart v. Walker, 3 Daly, 136. The rule excluding the agent's declarations unless of such a character, applies with equal force whether the agent is a general or special one, or the principal an individual or corporation. White v. Miller, 71 N. Y. 118. Without further discussing the effect of the exception to the admission of the agent's declarations, it is apparent that the evidence received as to the alleged conversation did not operate as a waiver of the condition stated.

There was no estoppel, for the party sought to be estopped must do some act or make some admission with an intention of influencing the conduct of another, or that he had reason to believe would influence his conduct, and which act or admission is inconsistent with the claim he professes to make. The other party, too, must have acted upon the strength of such admission or conduct. Grange v. Palmer, 56 Hun, at page 487, 10 N. Y. Supp. 201; Brown v. Bowen, 30 N. Y. 519; Rubber Co. v. Rothery, 107 N. Y., at page 316, 14 N. E. 269; 7 Am. & Eng. Enc. Law, 17; Bigelow, Estop. (4th Ed.) 620.

The justice charged the jury that if they found that the landlord's son knew of the Hupfel mortgage, and had the conversation with the undertenant before referred to, and thereafter the mortgage to the landlord was filed, they might infer from such facts that there was a waiver of the condition contained in the seventh subdivision, and in that case the lease became operative. The landlord's counsel excepted to this portion of the charge, and the exception is fatal to the order. It was not warrantable to submit such a question to the jury with no evidence upon it tending to show a waiver. It was equivalent to telling the jury they might find for the tenant if they pleased. See Palmer v. Kelly, 56 N. Y. 637. As there was no waiver of the seventh subdivision, the written lease never became operative, and, as a consequence, the tenant and those in possession under him held possession of the premises by force of the oral hiring, and that alone. That the oral hiring expired August 1, 1896, appears by the evidence of the landlord, his son, and of Sexton, the tenant, corroborated and confirmed by the three written receipts and extensions from May 1, 1896, to August 1, 1896, and not contradicted.

In Lomer v. Meeker, 25 N. Y., at page 363, the court said:

"The witness was not impeached or contradicted. His testimony is positive and direct, and not incredible upon its face. It was the duty of the court and jury to give credit to his testimony. The positive testimony of an unimpeached, uncontradicted witness cannot be disregarded by court or jury arbitrarily or capriciously. They are bound to believe, for judicial purposes, such testimony, and it would be, in an instance like this, the clear duty of the court to set aside the verdict of a jury founded upon a disbelief of clear, uncontradicted, and undisputed evidence."

See, also, Kelly v. Burroughs, 102 N. Y. 93, 95, 6 N. E. 109; Plyer v. Insurance Co., 121 N. Y. 691, 692, 24 N. E. 929; Dwight v. Insurance Co., 103 N. Y. 341, 358, 359, 8 N. E. 654; Herring v. Hoppock, 15 N. Y. 409, 413; Storey v. Brennan, Id. 524; Elwood v. Telegraph Co., 45 N. Y. 549; People v. Cook, 8 N. Y. 67; Arms v. Arms, 13 N. Y. St. Rep. 196; Newton v. Pope, 1 Cow. 109, 110; Branch v. Levy, 46 N. Y. Super. Ct. 428; Cunningham v. Gans (Sup.) 29 N. Y. Supp. 979. The exceptional rule that, where the witnesses are interested, the case must be submitted to the jury, cannot be applied here, for the landlord and his son were not only corroborated by Sexton, the tenant, but by the writings as well. The settled rule is that a direction to find a verdict for one of the parties is always proper where a contrary verdict would be set aside on the ground that it was against evidence. People v. Cook, 8 N. Y. 67, 75; Herring v. Hoppock, 15 N. Y. 409; Storey v. Brennan, Id. 524; Rudd v. Davis, 7 Hill, 529; McMullen v. Hoyt, 2 Daly, at page 278; Cagger v. Lansing, 64 N. Y., at page 427; cases cited in Bank v. Sirret, 97 N. Y., at page 324; Williams v. Guile, 117 N. Y., at page 347, 22 N. E. 1071; Bulger v. Rosa, 119 N. Y. 459, 24 N. E. 853; Foley v. Royal Arcanum, 78 Hun, 222, 28 N. Y. Supp. 952.

In Wilds v. Railroad Co., 24 N. Y., at page 433, the court said:

"No legal principle compels him [the judge] to allow a jury to render a merely idle verdict. The full extent of this position has been held by this court (Johnson v. Railroad Co., 20 N. Y. 73) in saying that, 'To carry a case to the jury, the evidence on the part of the plaintiff must be such as, if believed, would

authorize them to find that the injury was occasioned solely by the negligence of the defendant.' Can this be true without holding that, in every case where a verdict is set aside as against the clear weight of evidence, the court should take the decision of the case from the jury? Certainly it is not easy to conceive any other definite position which would be consistent with the decisions. Steves v. Railroad Co., 18 N. Y. 422."

The court ought to have directed a verdict in favor of the landlord, as requested at the trial (Douglas v. Seiferd, 18 Misc. Rep. 188, 41 N. Y. Supp. 289), and the exception to the refusal presents error.

The tenants' counsel challenged the landlord's right to maintain the proceeding, on the ground that he had not complied with chapter 303 of the Laws of 1882, which now forms part of the Revised Statutes (9th Ed.; volume 3, p. 2546), and reads as follows:

"No monthly tenant shall hereafter be removed from any lands or tenements in the city of New York or in the city of Brooklyn on the grounds of holding over his term (except when the same expires on the first day of May) unless at least five days before the expiration of the term the landlord or his agent serves upon the tenant, in the same manner in which a summons in summary proceedings is now allowed to be served by law, a notice in writing to the effect that the landlord elects to terminate the tenancy, and that unless the tenant removes from said premises on the day on which his term expires the landlord will commence summary proceedings under the statute to remove such tenant therefrom."

Prior to the passage of this act a monthly tenant could be dispossessed without the service of any notice other than a summons or precept issued according to the command of the statute; and the only condition imposed by the act is to require notice to the tenant, for, while he might be in possession under a monthly holding, the landlord was not chargeable with notice of the nature or duration of the subtenancies which the tenant might create. Notice in this case was served upon the tenant, and that complied with all legal requirements. Hence there is no merit in the objection made.

The jury found a verdict in favor of the tenant and undertenants, and the landlord moved for a new trial under chapter 748 of the Laws of 1896, which motion the justice properly denied on the sole ground of want of power. This act authorizes a justice of a district court to set aside the verdict of a jury rendered "in an action," and does not apply to summary proceedings, which are denominated "special proceedings" as distinguished from "actions." Dorschel v. Burkly, 18 Misc. Rep. 240, 41 N. Y. Supp. 389. The only remedy open to the landlord after the verdict was the appeal which he has taken.

The final order must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.