WILFRED GIROUX, Respondent, *v.* JOSEPH McCREA, Appellant.

Third Department, January 20, 1923.

Landlord and tenant — tenant had valid lease of farm on shares for one year — tenant dispossessed before end of term — decision and order in summary proceedings in Justice's Court no bar to subsequent action by tenant to recover more than $200 as unliquidated damages — failure of tenant to set up defenses in summary proceedings did not estop him from maintaining subsequent action.

A valid verbal lease of a farm on shares for one year is shown where it appears that the understanding of the parties was that the farm was to be worked on shares under a written lease; that the lease was not executed by the tenant, who refused to sign it because it contained certain conditions that he would not agree to, and that the tenant went into possession and worked the farm for several months and divided the income therefrom with the landlord.

The order and decision in a Justice's Court in summary proceedings, instituted prior to the expiration of the term, in which the landlord construed the tenant's holding as a tenancy at will and alleged that his failure to sign the written lease constituted a breach, was not a bar to a subsequent action by the tenant to recover more than $200 as unliquidated damages, consisting of the amount of money expended by him during his occupancy and the value of work, labor and services performed.

The tenant was not required by section 2244 of the Code of Civil Procedure (now Civ. Prac. Act, § 1425) to answer the summary proceedings by setting up all the defenses available to him, and his failure to do so did not estop him from maintaining any subsequent action arising out of the relation of the parties before the tenancy was terminated by the issuing of the dispossess warrant, and the provision of section 2947 of the Code of Civil Procedure (now Justice Court Act, § 140) that a failure to interpose a counterclaim precludes the defendant in the action from maintaining an action thereafter to recover on his counterclaim is not applicable, since by section 2948 of the Code of Civil Procedure

(now Justice Court Act, § 141), said provision of section 2947 does not apply where the counterclaim is for $200 more than the judgment which a plaintiff recovers and where the counterclaim consists of a claim for unliquidated damages.

APPEAL by the defendant, Joseph McCrea, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Clinton on the 19th day of April, 1922, upon the verdict of a jury, and also from an order entered in said clerk's office on the same day denying defendant's motion for a new trial made upon the minutes.

*Wilmer H. & Orville R. Dunn* [*Wilmer H. Dunn* of counsel], for the appellant.

*Wallace E. Pierce,* for the respondent.

KILEY, J.:

In the year 1921, and previous thereto, the defendant and appellant, Joseph McCrea, owned a farm of 106 acres in the town of Champlain, Clinton county, N. Y. Upon this farm was what would be classed as the main house and farm buildings and some distance therefrom a tenant house. In the month of February, 1921, the plaintiff, respondent, had a conversation with McCrea at his barn on the farm about working the farm on shares. That conversation is given by the respondent as follows: " I asked Mr. McCrea if he wanted to give his farm on shares and he told me yes, and he told me his proposition. He says: ' I will give you my farm on shares with twenty sheep, ten cows and three horses, and furnish all tools to work the farm;' " that he had a lease to sign and Giroux said he would like to see the lease, which McCrea said he did not have there, that it was at his brother's. The term was to commence March 1, 1921, and so far as appears from the record was for a one-year term. About two days after the first conversation respondent again saw the appellant about the lease, and it was given to him; he could not read nor understand it, and asked permission to take it away and have it read and explained to him. McCrea let him take the lease away and he had his sister-in-law and brother-in-law read and explain it to him. Respondent could neither read nor write English. That afternoon he and his brother-in-law, Emile Guay, saw appellant, and Giroux says: " I told him it was a condition in the lease so I didn't like; so I didn't want to sign the lease; and Mr. McCrea says, well you can sign the lease and go on the farm and we go by word now, what he told me. So I went there with my brother-

13

in-law, with David Guay." Respondent says that he gave the unexecuted lease back to appellant; that he saw appellant again before he moved on the farm, and they talked about the lease and that he again told McCrea that he did not want to sign the lease because of some of its provisions, and that McCrea said to him at that time: "I will go and have that lease typewrited; I will take those things out of the lease and I going to put some more." He says "you go on the farm, you can bring any time you want to." David Guay was present at this conversation and swears that McCrea said he would take the objectionable provisions out of the lease and at the same time said: "go on the farm any time you want to, the farm is yours, that night." Emile Guay was also present; his version of the conversation is as follows: "he said he wouldn't sign that lease and he handed the lease back to Mr. McCrea; and Mr. McCrea said he could sign the lease if he wanted to; but that certain things he talked about he had to do. After a while Mr. McCrea said if you want to make a lease yourself I will sign it. My brother-in-law did not answer yes or no." Respondent swears that appellant never presented the typewritten lease to him, and that he never saw it until July tenth subsequently when a lawyer, Arthur Hogue, had it at his house. This was after McCrea had taken further steps with reference to the possession of the farm which will hereinafter appear. On the 26th or 27th of February, 1921, Giroux moved onto the farm, occupying what has hereinbefore been called the tenant house. During all of the time herein mentioned McCrea occupied the other house upon the farm in question. Giroux helped repair the house, cut and put in the year's wood, picked and drew stone, and carried on the farm and tilled the same, planted and sowed the crops; but did not reap any benefit therefrom, his only income being from one-half the milk of the dairy and one-half the proceeds of the sale from a young sheep and a calf. He paid out more than he received. The construction of the arrangement between these parties is a verbal lease of the farm, on shares, for one year. As such the lease was valid. (Real Prop. Law, § 242; *Ward* v. *Hasbrouck*, 169 N. Y. 407.) On or about June 10, 1921, the appellant prepared and served on the respondent a notice to quit and remove from the premises in which he construed the tenant's holding as a tenancy at will and the alleged breach as a failure to sign the written lease. It required the tenant to vacate the premises on or before July 12, 1921, a full thirty days' notice. It may be observed here that there are many well-considered cases where it is held that the relationship of the parties as developed here constitutes a tenancy in common in the crops and proceeds. It is not so here, as it may

be said that it was agreed by the parties that such would not be the result; such agreement is manifest by active declaration on the one side and by assent on the other. The tenant did not move, and on the 14th day of July, 1921, the landlord filed his petition in writing with a justice of the peace of the town of Champlain containing the allegation of the tenancy at will and the alleged breach. A precept was issued thereon returnable on the 19th day of July, 1921, directed to this respondent as tenant, containing the usual provisions to remove or show cause. The respondent was at the place fixed for the return but did not appear or answer in the proceedings. A final order was granted and while the record does not contain it, the evidence shows that a warrant to dispossess was issued, but was not executed as the respondent vacated without resort to the warrant. The issuing of the warrant canceled the agreement between the parties. (Code Civ. Proc. § 2253.)* I am assuming, as outlined above, that there was a valid letting for one year. By the same token the respondent could have answered and defended in the summary proceedings upon the ground that his tenancy was for one year and not a tenancy at will. The acquiescence of the appellant and taking the benefits flowing therefrom until June 10, 1921, when the notice to ·quit was served, was a mutual construction of their relation as a one-year lease. The respondent, as he had a right to do, accepted the appellant's construction upon their relation as he put it in his petition to the Justice's Court. Subsequent to the foregoing proceedings in Justice's Court and after their final determination, the respondent brought an action in the Supreme Court for moneys he had expended in excess of what he received, and for work, labor and services all of which it is obvious inured greatly to the benefit of the appellant. He was successful, obtaining a judgment against the defendant, appellant, for $376.69 damages and $76.28 costs. Defendant's answer in the action set up one affirmative defense only, viz., that the decision and order in the Justice's Court in the summary proceedings was a bar to this action and was *res adjudicata*. It is the only defense urged upon this appeal. Shall it prevail? That is the only question here. It would seem from a reading of this record that justice and equity points the other way. Section 3339 of the Code of Civil Procedure,† under which Code this appeal must be considered, says: " There is only one form of civil action. The distinction between actions at law and suits in equity, and the forms of those actions and suits, have been abolished." The whole machinery of the law as reflected in all of the proceedings

* Now Civ. Prac. Act, § 1434.— [REP.    † Now Civ. Prac. Act, § 8.— [REP.

involved in the controversy throughout its course does not permit of stopping here and rendering judgment. It is urged that, under section 2244 of the Code of Civil Procedure,* which greatly enlarges the powers of a justice of the peace by amendment (Laws of 1920, chap. 132), the respondent should have answered the petition in summary proceedings setting up all of the defenses available to him, and by reason of his failure to do so he was estopped from maintaining any subsequent action on any cause arising out of the relation of the parties before the tenancy was terminated by the issuing of dispossess warrant. (*Brown* v. *Mayor,* 66 N. Y. 385; *Reich* v. *Cochran,* 151 id. 122.) Accord with this reasoning cannot be indulged in until further consideration of the application of the law to all of the facts is had. Under the provisions of section 3333 of the Code of Civil Procedure† the proceedings in Justice's Court must be deemed to be an action. The whole statute law, so far as it relates to proceedings in Justice's Court, must be read together. We are encouraged in that regard by the argument of the appellant because he can only make his position as to the force of section 2244 available to him by invoking the aid of section 2947 of the Code of Civil Procedure;‡ in turn he is bound by the exceptions found in section 2948 of the same Code.‡ Section 2947 provides that as a penalty for failing to interpose his counterclaim, the defendant is forever thereafter precluded from maintaining an action to recover on his counterclaim, but section 2948 qualified section 2947 by eliminating from the force of the prohibition, so far as applicable here, " 1. Where the amount of the counterclaim is two hundred dollars more than the judgment which the plaintiff recovers. * * *

" 3. Where the counterclaim consists of a claim for unliquidated damages."

The counterclaim was for more than $200 over any judgment the appellant could recover in the summary proceedings and respondent's claim (counterclaim) in Justice's Court was for unliquidated damages.

Under these provisions of the statute the reasoning of the trial judge, where he says: " The issues here have not been submitted to a court of competent jurisdiction. There has been no litigation between the parties upon these issues," finds warrant. The answer in this case consists of general and specific denials and affirmative allegations of facts to sustain the defense of *res adjudicata.* A

* Now Civ. Prac. Act, § 1425.— [Rep.

† Now Civ. Prac. Act, § 4; Gen. Const. Law, § 11-a, as added by Laws of 1920, chap. 917.— [Rep.

‡ Now respectively Justice Court Act, §§ 140, 141.— [Rep.

more serious question than any thus far considered might and would have been presented had proper objections been taken to the evidence offered on the measure of plaintiff's damage. The evidence offered to sustain the claim for damage was as to the amount he expended over and above what he received and the value of his services. The first objection of appellant goes to the right of respondent to maintain the action because the proceeding in Justice's Court was a bar, and that the evidence that respondent had a conversation with appellant in February " would be incompetent and improper for any purpose." The next objection was to the statement that respondent paid five dollars and sixty-three cents for grass seed; the objection was that this was a wrong measure of damage, " because the prices he paid ought to be shown by the market at that time." Plaintiff's counsel put to a witness a hypothetical question as to the value of his (plaintiff's) services. Defendant objected as follows: " I object to the question; it does not properly set forth the work that was supposed to have been done upon these premises." Overruled and no exception taken. All evidence of the value of services went in without objection except as aforesaid. It may well be doubted whether this was the proper measure of damage. No other was capable of exact or proximate measurement. This came the nearest to it that could be given. Appellant by his silence should be held to have acquiesced. It is manifest that respondent was entitled to some damages. This will not be denied him upon evidence which approximates the truth and does justice between the parties.

I favor affirmance, with costs.

H. T. KELLOGG, Acting P. J., HINMAN and HASBROUCK, JJ., concur.

VAN KIRK, J. (concurring):

The plaintiff has brought this action to recover the reasonable value of work performed by him and money advanced and expended by him for supplies on defendant's farm. In pursuance of an arrangement between them this plaintiff went into occupation of this farm late in February. He worked the farm until July twelfth. On June tenth this defendant served upon plaintiff the usual written notice to vacate within thirty days. Thereafter defendant presented his petition to a justice of the peace, who issued a precept requiring plaintiff to vacate on or before July twelfth, or show cause why he should not. This plaintiff, the defendant in that proceeding, appeared, but did not answer or offer any evidence. Thereupon an order was made for his eviction. Plaintiff then left the farm and has brought this action. The

defendant here has pleaded the determination in the Justice's Court as a bar, and the one question presented is whether or not this is a good defense. The jury has rendered a verdict in favor of the plaintiff and the defendant has appealed.

"In the absence of family relationship, when one renders beneficial services for another, the law ordinarily presumes a request and a promise to pay what such services are reasonably worth, unless it is understood that they were to be rendered gratuitously, or unless they were rendered under circumstances which repel this presumption." (40 Cyc. 2809; *Crane* v. *Ganung*, 89 App. Div. 398.) The circumstances here do not repel the presumption that the defendant would pay for plaintiff's services in working defendant's farm. The property to be occupied is a farm. Farms are cultivated during the season, and the crops harvested in the late summer and fall. This plaintiff entered upon this farm to cultivate it. The oral understanding under which he was to occupy and cultivate the farm during the succeeding season was not treated as a completed contract. The contract was to be drafted by the defendant and presented to the plaintiff for signature. In pursuance of this tentative arrangement the plaintiff did enter the farm and remained until July twelfth, with the knowledge, consent and at the wish of the defendant. He was to and did work the farm and, before he left the farm, had put in the season's crops and in part cultivated them. The plaintiff has testified that, by this tentative arrangement, he was to work the farm upon equal shares, each party to furnish one-half the supplies. This proof is admissible to show the circumstances under which the plaintiff entered and did his work, and it is not contradicted.

An agreement to work a farm on shares "does not amount to a technical lease; that the relation of landlord and tenant is not contemplated, and the portion of the crops reserved to the owner is not rent, but compensation for the use of the land, while the other portion is compensation to the occupier for his work, labor and services, etc., and that the legal possession of the land is in the owner, and the two are tenants in common of the crop." (*Taylor* v. *Bradley*, 39 N. Y. 129, 140.) The defendant understood that, unless the written lease was signed, no lease for the farm would exist and plaintiff could be evicted from the premises; and, if this eviction were late in the season, he would have performed valuable services upon the farm and expended moneys for supplies to defendant's benefit. We are not informed what provision of the proposed lease the plaintiff refused to sign. So far as we know he was justified in his refusal and was evicted without fault on his part. An inference that plaintiff's services rendered and money expended

to the benefit of the defendant were so rendered and expended at the request of the defendant and upon an implied promise to pay what such services were reasonably worth, is justified. Since this plaintiff, in good faith and under promise of defendant and in expectation of opportunity to complete his supposed contract, was without fault on his part deprived by defendant of such opportunity, if plaintiff may not recover, the defendant unjustly enriches himself and plaintiff suffers unmerited loss. The plaintiff should recover the fair value of what he has given, and " it is immaterial whether the plaintiff has parted with money, property or services." (1 Williston Cont. 1033.) This rule applies in law as well as equity. (Keener Quasi-Cont. 278, 279.)

The recovery then may be sustained, unless the adjudication pleaded is a bar. This determination is final between the parties to this action as to all material facts determined and which are required to be alleged as a basis of the proceeding. (*Reich* v. *Cochran*, 151 N. Y. 122, 126.) It is essential to have in mind just what was determined. So far as material the order is as follows: " On or about March 1st, 1921, the said landlord, petitioner, let said defendant, Wilfred Giroux, into possession of said lands and premises without any lease having been executed, but pending the execution of a lease between the parties, and after due drafting of such lease and tender of same to said Giroux for his signature he refused to sign same, but continued to hold possession and occupy said lands and premises without any lease and thereby, by operation of law, became a tenant at will of said petitioner; and that said petitioner caused a notice in writing to be served personally on said Giroux on June tenth last, requiring him to remove from said premises within one month thereafter, to-wit: on or before July 12th, 1921; * * * Now, therefore, you, the said Wilfred Giroux, are hereby required forthwith to remove from said house, lands and premises, * * *." The determination is that, when plaintiff refused to sign the lease and remained in possession, he became by operation of law a tenant at will. (See 38 Cyc. 124.) When he performed the work upon the farm, however, this was not the relation. He was then working the farm on shares for compensation. (*Taylor* v. *Bradley, supra; Reynolds* v. *Reynolds*, 48 Hun, 142, 144.) The justice of the peace had not jurisdiction of plaintiff's claim for the reasons given by KILEY, J., in his opinion. The order in summary proceedings is not a bar to the cause of action in which recovery has been had. The fact that he was properly evicted when he refused to sign the lease (*Welch* v. *Winterburn*, 25 Hun, 437) does not bar a recovery in this action; nor does the fact that he became a tenant in common

with the defendant as to the crops. These were not matured or ready for use or sale when he was evicted.

No other question is presented by appellant.

The judgment and order should be affirmed.

H. T. Kellogg, Acting P. J., Hinman and Hasbrouck, JJ., concur.

Judgment and order affirmed, with costs.