NEW YORK CITY HOUSING AUTHORITY, Landlord, *v.* ANPARA PENA, Tenant.

Municipal Court of the City of New York, Borough of Manhattan, June 30, 1953.

*Irving Wise* for landlord.

No appearance for tenant.

M. SHAPIRO, J.  The landlord, New York City Housing Authority, has applied for an order, ex parte, providing for delivery of a copy of the precept in this proceeding to the Director of the Central Islip Hospital, Central Islip, New York, a mental hospital operated by the State of New York.

Heretofore the landlord, pursuant to the Public Housing Law, acquired title to premises 234 East 113th Street, borough of Manhattan, city and State of New York, as part of an area to be cleared and demolished for the construction of a public housing project.  The tenant occupied an apartment in the said premises.  Upon the failure of the tenant to pay the monthly rent, a summary proceeding for the eviction of the tenant on the ground of nonpayment was duly commenced. Service of the petition and precept was made upon the tenant by affixing a copy of the same upon the outside door of the tenant's apartment, and mailing copies thereof to the tenant at the above address.  (Civ. Prac. Act, § 1421.)  The tenant failed to appear, and an application was duly made to dispense with a nonmilitary affidavit and for a final order authorizing the issuance of a warrant to dispossess the tenant.  It then came to the attention of the landlord that the tenant was confined to the Central Islip State Hospital and had been so confined since her commitment by order of the Supreme Court on or about August 22, 1952.  The landlord informed the court of the facts and the application was adjourned in order that additional information be obtained with respect to the tenant's status as a guide to further action in this proceeding.  The landlord was subsequently informed by the Director of Central Islip State Hospital that no formal adjudication of incom-

petency of the tenant had been made and that none was being considered. He stated further that she was being treated for a chronic mental disorder and it was not now possible to determine the date of her release.

The tenant appears to be without financial means. There has been no formal adjudication of incompetency and therefore no committee is presently responsible for her person or assets. However, under subdivision 14 of section 34 of the Mental Hygiene Law, the Commissioner of Mental Hygiene or his designee has certain limited authority in respect to liquid assets, but that question is not here presented.

Clearly, the landlord is legally entitled to possession of the apartment for nonpayment of the rent. There is apparently no prospect that the rent will be paid, the tenant having been confined to the Central Islip Hospital since August, 1952. What else is necessary, if anything, to obtain a final order awarding possession for nonpayment? The immediate questions presented on behalf of the tenant are: (1) what protective powers, if any, may the Municipal Court exercise in behalf of the tenant, and (2) if the court has any power, what should be done?

Undoubtedly, this problem has been presented to the Municipal Court on prior occasions, but we have been unable to discover a published clear-cut adjudication. See for example *Matter of Hassell* (N. Y. L. J., Sept. 28, 1943, p. 716, col. 5). This was also a nonpayment proceeding in which the tenant was committed to a State hospital but no adjudication had been made and therefore no committee appointed. The Supreme Court refused to authorize the Attorney-General to receive, on the mental patient's behalf, the proceeds of a dependency allotment from her husband in the armed forces to be applied towards payment of the rent, or to appoint a committee upon the application of the landlord. Judge Pecora said, however: " The only solution this court sees in the dilemma in which petitioner finds himself is to have petitioner apply in the Municipal Court in his summary proceeding for the appointment of an attorney to receive service on behalf of the patient and to protect her interests. The Municipal Court would then have a basis for issuing a final order, if one is justified. This procedure, the court is informed, has been used in similar situations."

Article 83 of the Civil Practice Act, which prescribes the entire statutory procedure in regard to summary proceedings, including mode and manner of services, makes no special provision for the method of service upon a person situated as this

tenant is. Article 83 represents a departure from the general provisions prescribed by the Civil Practice Act for the service of process and the institution of a legal action. (Cf. art. 25.) It would appear, therefore, that the provisions of section 1421 of the Civil Practice Act, governing the requirements for institution of a summary proceeding stand alone and are autonomous. This is a proceeding in rem and compliance with the provisions of section 1421 would vest jurisdiction in the court. (*McCotter* v. *Flinn*, 30 Misc. 119, 120; *Agostini* v. *De Antueno*, 199 Misc. 191.)

The purpose of summary proceedings is to afford to a landlord an expeditious method of recovering possession of leased property. To effectuate this purpose, section 1421 of the Civil Practice Act provides for service of the precept by either personal, substituted or conspicuous place service. Upon such service and compliance with other prerequisites, jurisdiction attaches. Since neither the Civil Practice Act nor any other statutory provision makes reference to any particular method of serving the precept and petition upon an alleged incompetent or sets any limitation upon obtaining jurisdiction to recover possession of the real property involved in such a case (cf. Civ. Prac. Act, § 1410, subd. 7, for special provision relating to obtaining possession where tenant has deceased), it may well be argued that no further steps are required, and that upon proof of nonmilitary service of the tenant a final order must be granted to the landlord. Assuming, for the sake of discussion, that the express statutory provisions governing summary proceedings are not exclusive when the interests of an alleged incompetent are involved, but must be read in conjunction with other apposite enactments, an examination of such provisions, and of the powers of the Municipal Court thereunder is called for.

The Municipal Court is a court of record (Judiciary Law, § 2, subd. 11) and under section 1 of the Civil Practice Act and section 15 of the Municipal Court Code, pertinent provisions of the Civil Practice Act are applicable to the Municipal Court. (*F.T.B. Realty Corp.* v. *Goodman*, 300 N. Y. 140, 147.) With both article 83 of the Civil Practice Act and the Municipal Court Code silent regarding the specific matters herein presented, we must perforce look to other provisions of the Civil Practice Act for guidance.

Section 207 of the Civil Practice Act provides for the appointment of a guardian ad litem or special guardian for an infant

or an incompetent person at any stage in any action or proceeding, when it appears necessary to the court for the proper protection of the rights and interests of such persons. This section has no application herein since its powers may be exercised only by the Supreme Court, and since in any event its provisions apply only where there has been an adjudication of incompetency. It is well established that the courts have no power to appoint a special guardian on behalf of a person who, although apparently incompetent to handle his affairs, has not been judicially adjudicated an incompetent. (*Matter of Frank*, 283 N. Y. 106, 111; *Griffin* v. *New York Life Ins. Co.*, 272 App. Div. 939; *Zalinsky* v. *Zalinsky*, 103 Misc. 308; *Gasperini* v. *Manginelli*, 196 Misc. 547.)

In *Matter of Frank* (*supra*, p. 111), the court stated: " It is claimed that section 207 of the Civil Practice Act contains authority for the payment to the special guardian. That section applies to an infant or incompetent person. It does not mention an alleged incompetent. Rule 285 of the Rules of Civil Practice provides that in all proceedings for the appointment of a committee the alleged incompetent shall be designated as ' an alleged incompetent person,' and that after the appointment of a committee he shall be designated as ' an incompetent person.' "

In *Griffin* v. *New York Life Ins. Co.* (*supra*), the Appellate Division reversed an order denying defendant's motion to vacate the ex parte appointment of a guardian ad litem for a person who was committed, but against whom there had been no adjudication of incompetency and on whose behalf no committee had been appointed. The court said: " Although the Supreme Court has undoubted jurisdiction over the property of incompetents within the State, such jurisdiction may not be exercised until the fact of incompetency has been judicially determined. (*Matter of Blewitt*, 131 N. Y. 541; *Matter of Andrews*, 192 N. Y. 514; *Finch* v. *Goldstein*, 245 N. Y. 300; *Matter of Frank*, 283 N. Y. 106; *Matter of McGuinness*, 290 N. Y. 117.) In the absence of such determination, which could only have been made on proper notice (*Matter of Blewitt*, *supra*), the Special Term lacked authority to appoint the guardian ad litem, and the motion to vacate such appointment should have been granted."

In *Zalinsky* v. *Zalinsky* (*supra*), the court refused to appoint a special guardian for the defendant who was confined under an ex parte commitment, but instead appointed a person under

section 427 of the Code of Civil Procedure, now subdivision 1 of section 226 of the Civil Practice Act, requiring the person so designated to look after the interests of the incompetent.

In *Gasperini* v. *Manginelli* (*supra*), the court said, at page 551: " It is the inquisition resulting in the appointment of a committee which determines the question of incompetency. (*Finch* v. *Goldstein*, 245 N. Y. 300.) In the absence of such a determination and appointment, the court has no authority either to appoint a guardian ad litem or to exercise any control over the property of an *alleged* incompetent. (*Matter of Frank*, 283 N. Y. 106.) "

Section 226 of the Civil Practice Act provides that where the court has reasonable ground to believe that the defendant is mentally incapable adequately to protect his rights, although not judicially declared to be incompetent to manage his affairs, it may in its discretion make an order requiring a copy of the summons to be also delivered in behalf of the defendant to a person designated in the order, and that service shall not be deemed complete until it is so delivered. It is to be observed that this section speaks generally of " the court," a generic description having a broad connotation. The Municipal Court being a court of record, the power authorized by section 226 may be exercised by such court. See, also, in this connection section 15 of the Municipal Court Code, which prescribes that except as otherwise provided by the Municipal Court Code, the practice, pleadings, forms and procedures of the Municipal Court shall conform nearly as may be, to that of the Supreme Court.

It is to be observed that section 225 of the Civil Practice Act, prescribes the method and the requirements for service of process upon a natural person. That section specifies how service shall be effected upon infants and judicially declared incompetents. Clear it is, therefore, that unless all of those requirements are complied with, service upon the persons named in section 225 is not complete and valid for the institution of legal action or a special proceeding. Sections 225 and 226 are *in pari materia* and should be read together. By reason of such a detailed specification elsewhere, in respect to certain disabilities, it must be deemed that section 226 does not purport to add mandatory requirements in order to vest jurisdiction in the court. This interpretation is fortified by the proviso in the introductory sentence of section 226, that the court may provide that service shall not be complete until a copy of the summons is delivered as directed by an order made

under section 226. This proviso vests the court with discretionary power to require service upon a person in behalf of one of the types of persons named in section 226, but such requirement is not mandated upon the court.

Rule 44 of the Rules of Civil Practice which is obviously designed to implement and clarify the application of section 226, specifically states that the person designated to receive a copy of the summons is only appointed " to examine into the circumstances " in order to protect the rights of the type of person described in section 226. According to rule 44 such person can be designated at any stage of an action and he is required to examine into the circumstances, unless and until a guardian ad litem or special guardian shall be appointed. Clearly then, the person designated under section 226, and named after an action has been legally instituted, has limited, *ad hoc* powers in respect to the functions assigned.

Were this proceeding pending in Supreme Court, there is little doubt of that court's inherent power to protect the interests of the tenant in some appropriate manner. However, in the light of *Matter of Frank (supra)*, no special guardian could be appointed and the Supreme Court would undoubtedly be limited to a designation as authorized by section 226 of the Civil Practice Act.

" Incompetent persons become the wards of the court, upon which a duty devolves of protection both as to their persons and property. This duty is not limited to cases only in which a committee has been appointed, but it extends to all cases where the fact of incompetency exists; and if the contention of the defendant's counsel with reference to his condition is true, a case was presented in which the duty of protection of the defendant's interest devolved upon the trial court." (*Wurster* v. *Armfield*, 175 N. Y. 256, 262.)

" In the nature of things it was impossible for the Legislature to meet every condition that might arise as affecting the person or property of incompetents, whether judicially declared insane or not; but it does not follow, because we cannot find express provision in the Code of Civil Procedure conferring the power or regulating the mode or manner of exercising it to protect the interest of lunatics and incompetents, that, therefore, the court lacks the power to protect such persons in some adequate manner. It has been repeatedly held that the power exists in the court, and where there are provisions in the Code of Civil Procedure describing the way in which this power shall be exercised, those provisions must

be complied with and followed; but where there is an absence of provisions regulating the exercise of the power, then it becomes the duty of the court to determine the mode or manner in which the power can be best exercised to effect the end desired. In other words, the power is inherent in the court and is not conferred by the Code of Civil Procedure, but the latter in many instances merely prescribes when and how it shall be invoked.'' (*American Mtge. Co.* v. *Dewey,* 106 App. Div. 389, 392.)

Although compliance with article 83, which makes no separable provision for alleged incompetency, apparently gives the court jurisdiction over a tenant confined to an institution, the continuing concern of the law with persons subject to such disabilities in our opinion requires extra cautions to be observed. Therefore, we believe that the court may find that the facts in this case may call for exercise of power under section 226.

An auxiliary problem presented by section 226 is that it deals with a summons in an action, and we are confronted with a situation involving a precept in a summary proceeding.

While the earlier cases under the Code of Civil Procedure held that a summary proceeding was not a civil action (*People* v. *Hamilton,* 39 N. Y. 107; *Decker* v. *Sexton,* 19 Misc. 59; *Seymour* v. *Hughes,* 55 Misc. 248), the cases after provision was made for entry of judgment in nonpayment proceedings and under the Civil Practice Act have uniformly held that a summary proceeding is a civil action. (*Giroux* v. *McCrea,* 204 App. Div. 192; *Smith* v. *Lichterman,* 134 Misc. 150; *Famous Realty* v. *Flota Mercante Grancolumbiana,* 81 F. Supp. 553.)

In *Giroux* v. *McCrea* (*supra*), the court stated, at page 196: '' Under the provisions of section 3333 of the Code of Civil Practice [Civ. Prac. Act, § 1425] the proceedings in Justice's Court [summary proceedings] must be deemed to be an action.''

Also, see, *Clark* v. *Newton* (140 Misc. 510) in which the Appellate Term, 1st Dept. (FRANKENTHALER, J.) stated at page 511: '' So that now a summary proceeding may be strictly a summary proceeding as originally, or it may be a summary proceeding in which judgment may be entered in favor of the landlord for rent due, or for the tenant upon his counterclaim. In other words, the controversy, when it may terminate in a judgment for the landlord or for the tenant, may be an action as well as a special proceeding. (Civ. Prac. Act, §§ 4, 5, 7, subd. 8.) ''

Section 218 of the Civil Practice Act provides that, " A civil action is commenced by the service of a summons, which is a mandate of the court." Since a summary proceeding is a civil action and is commenced by the service of a precept, it would seem clear that for all the purposes of the Civil Practice Act a precept is deemed to be a summons. Under the Revised Statutes summary proceedings were instituted by the service of what was denominated as a summons (see *Brown* v. *Mayor,* 66 N. Y. 385, 391). In *Four Forty-One Holding Corp.* v. *Bloom* (148 Misc. 565), it was stated, at page 568, " The form of precept under the former Code of Civil Procedure and under section 1418 of the Civil Practice Act is in substance the same as that of the summons under the Revised Statutes." Also, see, *Ackermann* v. *Berriman* (61 Misc. 165), in which is discussed the power of a city magistrate to issue a summons under a provision authorizing the issuance of a precept. It was there stated, at page 170, that: " It seems indisputable that the Legislature by the use of the words ' precept ' and ' process ' and the continuation of the powers gave the police justices elected under the Laws of 1848 the right to issue a summons." And at page 171, " Call the paper by whatever name you will, it is embraced within these terms ' precept ' or ' process ' and within the original power of the justice of the peace to issue the summons."

Had the tenant been adjudicated an incompetent and a committee appointed, there is no doubt that the action could not be commenced unless the committee were named as a party and served. (Civ. Prac. Act, § 225); *Matter of Brown,* 46 N. Y. S. 2d 575, revd. on other grounds, 268 App. Div. 886; *Jacobs* v. *State of New York,* 175 Misc. 561.) The Municipal Court has jurisdiction over actions or summary proceedings brought by or against a committee. (N. Y. City Mun. Ct. Code, § 6, subd. 4.) However, where there has been no such adjudication, there is jurisdiction in the court once the proceeding has been commenced pursuant to the provisions of article 83 and the precept and petition served on the tenant pursuant to section 1421 of the Civil Practice Act.

The provisions of section 226 are entirely discretionary. In *Codling* v. *Codling* (83 N. Y. S. 2d 86), Justice COLDEN, at Special Term of the Supreme Court in Suffolk County, refused to designate a person under section 226 since, as he found, the interests of the alleged incompetents were already adequately protected.

The court holds that it may exercise the power given under section 226, and that in the exercise of its discretion a person should be designated to examine into the interests of the tenant, and the most appropriate designee is the Director of Central Islip State Hospital. There are obviously no funds available to compensate any person so designated, and it is hardly to be expected that the landlord should pay such compensation. The director of the institution is therefore the logical person for designation. Under subdivision 14 of section 34 of the Mental Hygiene Law, the Commissioner of Mental Hygiene has been authorized to permit such a director to receive or obtain funds or other personal property belonging to a patient who has no committee, up to an amount or value not exceeding $1,000 without taking proceedings for the appointment of a committee. The Attorney-General, in an opinion to the Department of Mental Hygiene dated June 15, 1943, has ruled that the director has such power, this opinion interestingly enough stemming apparently from a situation similar to ours and dealing with his taking possession of property in quarters formerly occupied by the inmate. The director would certainly be the best person to be designated, since he may find it desirable to take over control of whatever assets the tenant possesses in the apartment.

In view of the limited function confided to the Director of Central Islip State Hospital, under section 226 and rule 44, and the fact that he is neither named as nor is he acting as a party in this summary proceeding, the court does not believe that the presence of the director outside the territorial jurisdiction of the Municipal Court of the City of New York affects the power of this court to designate him under section 226 of the Civil Practice Act. This court, as demonstrated above, has complete jurisdiction of this summary proceeding by reason of compliance with section 1421 of the Civil Practice Act. The designation of the director to render a report with respect to the interests of the tenant herein is not related to the question of jurisdiction and such designation is clearly within the power of the court under section 226. If the director shall fail or decline to make a report, this court can still exercise jurisdiction to issue a final order in accordance with the justice of the matter.